Thomas Lyon, Commissioner, *vs.* Willis Sanders et al.

A. executed a promissory note with B. as surety to C., and some time after its execution B. died, and A., the surviving payor and the executor of B., proposed to C. that they would execute new notes to him in lieu of the old note, payable in five equal instalments, which proposition was accepted by C., provided the representatives of the estate of B. deceased can sign a note that will be binding upon the estate of B., which was to be determined by consultation with C.'s attorney, who gave to C. the following advice: "If an executor gives a note, it is an acknowledgment that the estate of the testator has assets sufficient to pay it. If, after this, it should turn out that there are not assets, the executor will be liable to a judgment against himself and sureties on his executor's bond for the debt." Whereupon C. took and received from A. the new notes signed by himself and the executor of B.; the new notes given by the executor of B. being void so far as to bind the estate of testator, a bill was filed by C., alleging mistake, &c. against the representatives of B. to enforce the claim against the estate of the testator. *Held*, that there seems to be no mistake as to the facts of the case, and the complainant must have relief, if at all, on the case made by the bill.

It is alleged by C. that he was mistaken as to the legal effect of the attorney's opinion in its application to the facts. *Held*, that every man is charged with a knowledge of the law at his peril; for there is no other principle which is safe and practicable, and mere voluntary mistakes of law, without the intervention of the other parts, are not remediable.

If there was a valid contract entered into, to enlarge the time of payment by A. and B. to C., upon a sufficient consideration, *held*, that a suit commenced before the expiration of the time agreed upon, could not be maintained.

In error from northern district vice-chancery court at Columbus; Hon. Henry Dickinson, vice-chancellor.

The opinion of the court contains a sufficient statement of the facts of the case.

*George L. Potter*, for plaintiff in error.

*Boyken & Cruse*, on the same side, filed an elaborate brief.

*Harris & Harrison*, for defendant in error.

Mr. Justice FISHER delivered the opinion of the court.

This bill was filed in the vice-chancery court at Columbus, by the Branch Bank of the State of Alabama, at Mobile, alleging that on the 26th of May, 1840, Burwell Barnes, Willis Sanders, Jeremiah Sanders, and others, executed their joint and several promissory note to B. Gale, cashier of said bank, for $27,882.68, falling due twelve months thereafter. That the said Jeremiah Sanders died some time in the year 1840, having first made his last will and testament, and appointed the said Willis Sanders executor thereof. That on the 18th of February, 1842, the said Barnes and Willis Sanders made a proposition in writing to the complainant, to execute their six joint and several promissory notes to the complainant, in lieu of the said note of the 26th May, 1840, with the same securities, which proposition the complainant accepted, provided the representatives of Jeremiah Sanders could sign and bind his estate by the execution of the said " substituted notes." This question was to be determined by the attorney of complainant.

The proposition submitted by Barnes & Sanders is in these words :

" *Mobile, February* 18, 1842.

" GENTS : — On the 29th May last a note, drawn by Barnes & Sanders, for $27,882.68, was due. On the 11th of the same month we paid $459.62, but at the same time we paid a note in full for $4162.48, drawn by M. Calloway, which our debt we now propose to pay you on the 1st May next $3000, which is all we can pay this year, and the balance in five equal annual payments, to fall due on the 1st of May in each year, and offer you the same securities as before.

" BARNES & SANDERS."

Upon this proposition appears the following indorsement by the bank : " Accepted, provided the representatives of the estate of J. Sanders can sign and bind the estate, to be determined by the attorney." Then follows the attorney's opinion in these words : — " If an executor gives a note, it is an acknowledgment that the estate of his testator has assets

sufficient to pay it. If after this it should turn out that there are not assets, the executor will be liable to a judgment against himself and sureties on his executor's bond for the debt. I don't know who are Mr. Sanders' securities, but he says they are good." In pursuance of the proposition, and by virtue of the opinion of the said attorney, the five notes were executed. The notes are as follows :

" *Mobile, February 8th,* 1842.

" $5,287 66. On the first day of May, eighteen hundred and forty-three, we jointly and severally promise to pay B. Gale, cashier, or bearer, five thousand two hundred and eighty-seven dollars and sixty-six cents, with interest thereon from date, value received, negotiable and payable at the Branch Bank of the State of Alabama, at Mobile. Signed, Barnes & Sanders, Willis Sanders, executor of Jeremiah Sanders, deceased; Francis Thomas, Willis Sanders, and Lewis B. Sanders."

These several exhibits show the proposition submitted, how it was treated by the bank, and the manner in which it was finally closed.

It is further averred in the bill, " That it was understood, and mutually agreed between the said parties, that if the executor could not bind the assets (of his testator) by his signature to the proposed notes, that the original note was not extinguished. That conceiving that the executor could bind the assets of the said estate, by the execution of the said several notes proposed to be given for the first note, by his signature as executor of the said Jeremiah Sanders, complainants acceded to the said proposition, and accepted said several notes in place of the original note. That at the time the said notes were received, and the original note restored to the defendants, there was no understanding or stipulation that the substituted notes were a payment of the original note ; but if the said Willis could bind the assets of his testator, the original note was to be extinguished."

That complainants have been advised by their solicitors that the signature of the said Willis, " as executor of J.

Sanders," to said notes, did not bind the assets of the said testator, but that it was only the individual liability of the said Willis; and that there was a mutual mistake and surprise in complainant and the said Willis Sanders, in supposing that the signature of the latter to the said notes, as executor aforesaid, could bind the assets of said estate, and that there was a mistake of law and fact. That complainants understood the opinion of their attorney to mean, that the assets of the said estate " could be bound by the signature of the said executor," and accordingly received said notes.

The amended bill states that the said Jeremiah Sanders, in his lifetime, received a large amount of personal property from the said Barnes and Willis Sanders, to indemnify him as security on the original note. This bill is almost in substance and allegations the original bill. Its object is to set up the original note against the estate of Jeremiah Sanders. It makes, as does the original bill, the executor, legatees and devisees of and under the will of Jeremiah Sanders, parties defendants. It further alleges, that the personal estate of the testator is insufficient to pay said debt; avers that certain legacies have been paid under the will, &c.; and then prays for decree against the assets in the hands of the executor, a decree for the sale of the real estate, and a decree that the legatees who have been paid legacies shall refund the same for the purpose of paying said debt. This is a fair statement of the case made by the bills.

The defendants filed a demurrer to the original bill, which was overruled.

The executor, Willis Sanders, who was one of the original debtors, and the principal actor in the subsequent arrangements, answers, that the five notes were executed and delivered as a full payment of the original note; that there was no mistake of law or fact by any of the parties concerned; that in February, 1843, it was understood that the estate of Jeremiah Sanders had been released by the giving of the several renewal notes; that he then made a proposition to the complainant to pay a certain amount thereon, and to be released; that said proposition announced the fact that the estate of the said Jeremiah Sanders had been released.

45*

The answer of the other defendants may be treated as a general denial of the several allegations of the original and amended bills; and it is denied by all the answers, that any property was ever delivered to Jeremiah Sanders to indemnify him as security.

The testimony on the part of the complainants consists only in the deposition of B. Gale, the cashier of the bank, and payee of said notes.

This witness says that the proposition of Barnes & Sanders (already noticed) was accepted by the board of directors conditionally, "provided the representative of the estate of Jeremiah Sanders could sign and bind the estate, which fact was to be determined by the bank's attorney; that the attorney gave the opinion already stated;" that "under the instructions of the board, and acting as cashier of the institution, he assured Mr. Sanders, of the firm of Barnes & Sanders, who seemed to be charged with the settlement of the business; that the bank would never consent to release the liability of J. Barnes, deceased, (meaning J. Sanders;) and in making the settlement, he should have to retain the old note in the possession of the bank; that the new notes were drawn for proper amounts, and matured at distant periods, and would be held as collateral, and if paid when due would be satisfactory to the bank;" that though said notes are payable to him, he never had any interest therein; that the board determined to hold the old note, and to receive the new notes as collateral security, thereby granting all the time the parties desired. This is the substance of the deposition of this witness bearing upon this branch of the case.

Platt Stout, who was at the time an officer in the bank, and who made out the statement of the indebtedness of the parties, says that the new notes were received as a full discharge of the old note, and details the manner in which the business was transacted.

The answers are sworn to by the several defendants. It does not appear that either of the bills was sworn to.

We have stated the important facts put in issue by the pleadings, and the testimony on both sides.

It is clear that there was no concealment of the facts. The proposition of Barnes & Sanders was submitted in writing, and was too plain and intelligible to admit of a misconstruction. The complainants submitted this proposition to their own attorney, and received his opinion as to the power of Willis Sanders, the executor, to bind the estate of the testator, by his signature to the new notes. The attorney gave his opinion in writing, and the complainants now say that they understood it to mean that Willis Sanders could bind the estate of the deceased, by his signature to the notes as executor, &c.; and so understanding the opinion of their attorney, they received the notes, &c.

This was certainly no mistake as to the facts, and here we will remark, that there is a palpable conflict in this allegation of the bill and the testimony of Gale, who says that after the attorney had given his opinion, the board refused to surrender the old note.

Now the complainants must have relief, if at all, on the case made by their bill. They cannot be permitted to prove a case different from that made by their pleadings.

Is the allegation then true, that they were deceived as to the legal effect of the attorney's opinion? The answer says not, and Gale proves that so far from the opinion of the attorney having any influence on the board, they determined not to surrender the original note, but to receive the new notes, only as collateral security, and to retain the old note in the bank until their payment. This is the proof of the only witness to sustain the bill. We are of opinion that he is mistaken in saying that the old note was not to be delivered up on the execution of the new notes; but this is the complainant's evidence, and the only evidence to sustain the material allegations upon which they seek relief, and we have already seen that so far from proving, it actually disproves so much of the bill as alleges a mistake or surprise.

The case made by the defendants is briefly this: The answer positively denies that there was any mistake either of law or fact, and avers that the notes were executed, and the old one discharged in pursuance of the understanding of the

parties. This part of the answer, so far as it relates to the execution of the new notes, and the discharge of the old one, is fully proved by the testimony of Stout, who was at the time an officer in the bank. It is true, that there is a slight conflict between the testimony of this witness, and Gale, examined on the part of the complainants; but it will be seen from a careful examination of many of the allegations in the bill relating to this part of the transaction, that they fully sustain the testimony of defendant's witness and are in conflict with the testimony of Gale. We are, therefore, bound from the proof in the case to believe that the new notes were received as a payment, or discharge of the old note.

And this brings us to the consideration of the only point in the case, whether a mistake as to law, or the legal effect of the notes executed in discharge of the old note, can avail the complainants. If this mistake had been produced by the makers of the notes, undertaking to enlighten the complainants as to the law bearing on the transaction, and opinions thus advanced by the defendants had been acted on by the complainants, they might be entitled to relief. But such is not the fact in this case. The complainants, with the aid of their attorney, undertook to decide the law for themselves, and to apply its principles to the proposition submitted and the contract consummated thereupon. They say that they were mistaken in their application of the legal principles to the facts. Can they be relieved against such a mistake? In the case of *Lyon* v. *Richmond,* 2 Johns. Ch. R. 60, Chancellor Kent, says, " The courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of facts, though under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind." Again, in the case of *Hunt* v. *Rousmanier,* 1 Peters, 15, the court said, " That mere mistakes of law are not remediable is well established," and that whatever exceptions there may be to the " rule, they will be found few in number and to have something peculiar in their character, and to involve other elements of decision." We deem it unnecessary to multiply authorities on this point.

Lyon *v.* Sanders et al.

There is still, however, another view that may be taken of this case. We have said that the allegations of the bill are denied by the answer, and are only sustained, if at' all, by Gale's deposition. He says in substance, that all the defendants seemed to desire was time, and that upon the execution of these notes the time was accordingly extended. What time was extended? We must infer from his deposition that indulgence was granted on the old note, till the last of the five notes became due. The last note did not become due till the 1st of May, 1847. Yet this suit was commenced on the 8th of July, 1845, in violation of the contract proved by the witness. If there was a valid contract entered into, to enlarge the time of payment of the original note, as proved by the witness, a suit commenced before the expiration of the time could not be maintained. That this contract, as attempted to be proved by the witness, was based upon a good consideration, is clear; the interest due upon the original note, was calculated at the time the new notes were executed, and included in them, thereby increasing the sums drawing interest, several thousand dollars.

Looking at the case made by the bill, and as proved by the evidence, we are of opinion that the complainants are not entitled to relief.

Many questions have been urged by counsel, as to complainant's right to go into equity, to subject the real estate, and to require the legatees to refund legacies, and that creditors have a lien, &c. on the estate for their debts, &c. These several questions are only important to be considered, when a claim shall first be established against the estate. In the present controversy the decision of them could result in no benefit to the complainants, inasmuch as we have decided they have shown no demand against the estate.

Decree of the vice-chancellor, dismissing the bill, affirmed.