THE PHŒNIX INSURANCE COMPANY, Appellant, against BOLTON L. TAYLOR, Respondent.

### APPEAL FROM THE DISTRICT COURT OF HENNEPIN COUNTY.

The written portion of a policy of insurance described the property insured as follows: " On a stock of goods, consisting of a general assortment of dry goods, groceries, crockery, boots and shoes, and such goods as are usually kept in a general retail store." The policy also contained printed conditions of insurance, and it was thereby stipulated that if the premises should be used for the purpose of storing therein any of the goods, &c., denominated hazardous, extra hazardous or included in the memorandum of special hazards, except in the policy specially provided for, or afterwards agreed to by the Company in writing, the policy should be void.    The policy also gave printed classes of hazards, arranged under the heads of "Not hazardous," "Hazardous," "Extra hazardous," and " Memorandums of special hazards," among which latter was the following: " Gunpowder, phosphorus and saltpetre are expressly prohibited from being deposited, stored or kept in any building insured, or containing any goods, &c., insured by this policy, unless by special consent *in writing* on the policy." In an action upon the policy it was proved that at the time of effecting the insurance, the insured had among his goods, and *kept in his store for sale,* a small amount of gunpowder, about twenty pounds, and that gunpowder is an article that is ordinarily and usually kept in a general retail store, in quantities varying from ten to fifty pounds. *Held,* That keeping an article in a store, for retail purposes is not *storing,* such article within the meaning of the words of the policy.  That the written portion of the policy should control the printed stipulations and conditions when there is any want of harmony between them.  That the written words in this policy are broad enough to include any articles that are usually dealt in by persons keeping a general retail store, and all such articles are included in the policy, as if each was enumerated at length.

The ninth condition of a policy of insurance provided that the insured, on sustaining loss by fire, was to give notice to the Company, or its agents, make oath concerning the value of the property insured, the interest of the insured, and other particulars usually stipulated for in such policies.  A certificate was to be furnished, signed by a Magistrate, Commissioner of Deeds, or Notary Public, of the good faith, &c., of the insured.  A loss occurring, the local agent of the Company was notified, verbally, immediately after the fire, and he suggested delay until the arrival of the adjusting agent.  Shortly after, this agent arrived, and made an examination of the books and accounts of the insured, expressed himself satisfied, and took the affidavits of the parties.  He told them that no more was required of them, but that he would present the claim to the Company. The Company afterwards addressed a letter to the local agent, in which they place their refusal to pay the claim upon the sole ground that gunpowder was kept in the building, and make no objection to the sufficiency of the preliminary proofs.  *Held,* That by these acts the Company waived the ninth condition of the policy.

R In accounting for the loss of an instrument, there may be cases where suspicion is cast upon the fact of the loss, in which event great diligence in the search would be required ; but where no bad faith is attributable to the party asserting the loss, the establishment of a much less perfect case is sufficient.

## Points and Authorities of Appellant.

This was an action brought by the Plaintiff against the Defendant in the District Court of Hennepin County, upon a renewed policy of insurance executed by the Defendant to J. Green & Co., assignees of Moore and Powers, whereby the H. Defendant insured for said J. H. Green & Co., for one year from the 3d day of November, 1858, a stock of goods in the sum of $5,000, subject to certain conditions and regulations attached to and made a part of the contract.

The complaint set forth the policy, and the "terms and conditions thereon endorsed and thereto annexed." The opinion of the Court quotes the written portion of the policy describing the property insured, and also such of the conditions as are pertinent to the point decided.

At the time the insurance was effected the goods were at Minneapolis, but were removed to Clearwater, in Wright county, with the consent of Defendant, at which place it is claimed they were destroyed by fire in August, 1859. Before the goods were thus removed, they were sold by the assured, J. H. Green & Co., to. Messrs. Brown & Co., and the policy assigned, with the consent of the Defendant. The Plaintiff alleges he was a member of said firm of Brown & Co., and that after the loss he purchased out the interest of the other members of said firm in said claim.

The complaint further alleges that Henry M. Magill, an agent of the Defendant, waived a compliance of the requirements of the ninth condition of the policy.

The leading features of the answer are:

*First.*—It alleges that the terms and conditions attached to and made a part of the Policy, became and were conditions precedent.

*Second.*—It alleges that the said Brown & Co., assignees of the policy, used the building which contained said goods for the purpose of keeping and storing gunpowder, from the time of the assignment of said policy to them up to and at the time of the said fire, and that at the time of the said fire there was a large quantity of powder in said building, to wit: fifty pounds, whereby said policy ceased to be operative, and became wholly null and void.

*Third.*—It alleges that said Brown & Co. never complied with any of the requirements of the said ninth condition; and denies that the same were waived, as alleged in the complaint; and alleges that the said Henry M. Magill had no authority to make such waiver.

*Fourth.*—Denies that there has been an assignment of the claim to the Plaintiff by Brown & Co. since the fire, or that the Plaintiff is the owner of the alleged claim.

The reply admits the keeping of gunpowder in the store

with the goods, as alleged in the answer, but alleges that it was for retail purposes, and that it was an article usually kept in a general retail store.

It further alleges that the said Henry M. Magill had authority to act for the Defendant, and that he inquired into said loss, and examined some of the members of Brown & Co. in regard thereto, on oath, and waived all further compliance with the said ninth condition.

There is also a general denial of the new matter in the answer.

When the cause came on for trial, the Defendant moved for judgment on the pleadings, upon the ground that it appeared admitted that gunpowder had been, and was at the time of the fire, kept by the assured in the same building with the goods, without the consent of Defendant, whereby said policy became and was inoperative at the time of the fire, as appeared from the policy, terms and conditions thereto annexed, and set forth in the pleadings, which motion was denied by the Court.

The Plaintiff then offered proof, which was received under objections of the Defendant, tending to show the agency for the Defendant, of Matthew Magill and Henry Magill, and acts by them as such agents, in proof of the allegation of a waiver of the requirements of said condition nine attached to the policy.

The Plaintiff having closed his testimony, the Defendant asked the Court to dismiss the action, which said request was refused.

The jury having returned a verdict for the Plaintiff, the Defendant moved to set the same aside, and grant a new trial.

Points and authorities of Appellant.

I.—The motion for judgment on the pleadings, and the motion to dismiss the action, and the request to charge the jury, "That if the jury find there was powder kept or stored in the building where the property insured was at the time of the fire, the policy was vitiated, and Plaintiff cannot recover," all involve the same questions, which we will first consider.

The policy provides, that " it is made and accepted in refer-

ence to the terms and conditions hereto annexed, which are to be used and resorted to in order to explain the right and obligations of the parties hereto, in all cases not otherwise especially provided for." One of the terms and express stipulations thus referred to, reads as follows:

"Gunpowder, Phosphorus, and ' Saltpetre are expressly prohibited from being deposited, stored or kept in any building insured or containing any goods or merchandise insured by this policy, unless by special consent in writing on the policy."

This and the " memorandum of special hazards," together with the other class of hazards, were referred. to in, and attached to the policy, and constituted a part of the contract of insurance, as appears from the writing set forth in the complaint, and also from the express allegations in the complaint.

All such terms and stipulations in the contract are " promissory or prospective warranties," the breach of which by the assured will avoid the policy. *Angell on Ins.*, secs. 141, 143, note 2, 145, 147 *a;* 8 *Met.* 114; 2 *Denio*, 75; 7 *Hill*, 122; 3 *Selden*, 530, 370; 2 *Coms.* 210, 220; 5 *Hill*, 190–193; 30 *Maine*, 273; 6 *Wend.* 488; 6 *Cowen*, 673; 31 *Maine*, 219; 6 *Cush.* 42, 342, 348; 41 *Maine*, 208; 21 *Conn.* 19.

That "Provisos," "Exceptions," and "Specific Stipulations" control general and comprehensive language in an instrument, is too well settled to hardly justify a citation of authorities. And it is right in the face of this well known doctrine that the Plaintiff claims to construe this contract of insurance.

The following are a few of the numerous cases reported similar to the one now before the Court: *Lee vs. Howard Fire Ins. Co.* 3 *Gray*, 583; *Macomber vs. Howard Fire Ins. Co.* 7 *Gray*, 257; *Harris vs.' Columbiana Ins. Co.* 4 *Ohio State Rep.* 285; *Hynds vs. Schenectady County Mut. Ins. Co.* 1 *Kernan*, 554; *Westfall vs. Hudson River Fire Ins. Co.* 2 *Kernan*, 289; 16 *Maryland*, 377; 6 *Wend.* 493; 3 *Selden*, 530, 3 *Smith N. Y.* 194, 199, *note.*

Furthermore, it is provided in the first condition attached to the policy that if " the risk be increased by any means whatever within the control of the assured, or if such building

or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring, such insurance shall be void and of no effect." In the classification of property, as agreed upon by the parties, "Gunpowder" is placed under the head of "memorandum of special hazards," while the property insured falls under the heads of "hazardous" and "not hazardous." The agreement then determines that the introduction of specially hazardous articles (gunpowder) into the building with the goods did increase and render the risk more hazardous, and thereby render the policy "void and of no effect," independent of the special prohibition as to gunpowder.

Again: Gunpowder having been classed by the parties as "specially hazardous," and the property insured as only "hazardous" and "not hazardous," it was a warranty, independent of any of the other conditions and stipulations in the contract that no specially hazardous article should be introduced into the building with the goods, and a breach of such warranty avoids the policy. 30 *Maine*, 273; 3 *Gray*, 583.

II—There was no compliance with the requirements of the ninth condition attached to the policy, and no waiver or legal evidence of a waiver of such compliance as complained by the Plaintiff.

It is claimed that the alleged waiver was made by Matthew Magill and Henry M. Magill, as agents of the Defendant. But there is no legitimate proof of any such agency or waiver. The answer denies that said Magills made or had authority to make any such waiver.

The only evidence offered and relied upon by the Plaintiff to establish such agency, consists of the testimony of E. B. Ames, and a circular in the form of a book, which Ames says he received and circulated as agent, aside from the declarations and acts of said alleged agents.

"Neither the declarations of a man nor his acts can be given in evidence to prove that he is the agent of another." *Scott vs. Crane*, 1 *Conn.* 225; *Plumsted's lessee vs. Rudebagh*, 1 *Yates*, 502–505; *James' lessee vs. Stookey*, 1 *Wash. C. C. Rep.* 330.

The testimony of E. B. Ames (*see folio* 125, *of paper book,*)

that he was the agent of the Defendant at Minneapolis, and that Matthew Magill was the general western agent, was wholly inadmissible, and did not prove the agency of Matthew Magill. The fact that E. B. Ames was the local agent of Defendant at Minneapolis, could not enable him to know that Magill or any one else was an agent of the Defendant, except by hearsay. One agent is no more competent to prove the agency of another for the same principal, than is any other person. As it does not appear that E. B. Ames sustained any such relation to the Defendant, as would charge him with the knowledge as to whether Matthew or H. M. Magill was an agent of the Defendant or not, his statement that he was such agent is no evidence of the fact, any more than would be the statement of any other person. The testimony was incompetent.

No sufficient foundation was laid to open the way for the introduction of parol evidence as to the contents of the writing.

Points and authorities of Respondent:

*First.*—Assuming that the description of the property or stock insured did not cover or include the article of gunpowder, still the keeping of the article for the purposes of sale by retail, was not a violation of that provision of the policy prohibiting the *storing* of articles denominated hazardous, &c., in the building containing the insured property. " The word storing denotes a keeping for safe custody, to be delivered in the same condition as received, and where the safe keeping is the principal object of the deposit, and not a keeping for the purposes of consumption or sale in the usual course of business for which the building was occupied." *N. Y. Equitable Ins. Co., vs. Langdon,* 6 *Wend.,* 623; *O'Niel vs. The Buffalo Fire Ins. Co.,* 3 *Comst.,* 123; 1 *Kernan,* 554.

2d.—The clause under the head " Memorandum of special hazards," expressly prohibiting gunpowder, &c., " from being deposited, stored or kept in any building insured or containing any goods or merchandize insured by the policy unless by special consent in writing on the policy," has no applica-

tion to this case, because gunpowder itself was one of the articles insured, and this clause only applies when the prohibited article is not the subject of insurance, but is kept, &c., in a building which is insured, or which contains insured property.

*a.* Again, special consent in writing was given in this case, inasmuch as it was embraced in the description of the property insured.

3d.—There is nothing in the policy, or in any of its stipulations, conditions or terms, requiring *gunpowder* to be insured *eo nomine,* when itself is the subject of insurance. On the contrary, section 8 of the Conditions, hereinbefore quoted, by enumerating those articles which must be " particularly specified in the policy, in order to be included in the insurance," necessarily implies that all articles not thus enumerated, may be insured under general language. *Expressio unius est exclusio alterius.* *Broom's Legal Maxims,* 505–6; *See also the clause requiring store furniture to be separately and specifically insured.*

The language employed in this case, to wit, " Such goods as are usually kept in a general retail store," is sufficiently comprehensive to include gunpowder. This authorized the keeping of all articles ordinarily and usually kept in a general retail store, and allowed by the usages of that particular trade, or incidental or appertaining to that particular business, and " insurers are assumed to know such usages, evidence of which is always admissible." *Wall vs. Howard Ins. Co.,* 14 *Barb.,* 384–6, *affirmed in the Court of Appeals; Harper vs. The Albany Mutual Ins. Co.,* 17 *Court Appeals,* 3 *Smith,* 194; 1 *Phil. Ins.,* sec. 489; *Angell on Ins.,* sec. 203, *p.* 239.

4th.—In the construction of a policy of insurance, the written part is to prevail over the printed. The written clauses are to be considered as the real contract, as containing its elements, as expressing the real intention of the parties, having been framed under their immediate eye ; and therefore the Court will look to them to find out that intention, and, consequently will suffer such clauses to control the printed words. *Angell on Fire Ins.,* p. 11, *intr.,* sec. 14, 15; *also, pp.* 48–9,

*sec.* 13; *and cases therein cited; Wall vs. Howard Ins. Co.,* 14 *Barb., N. Y.,* 384.   This case affirmed in Court of Appeals, and doctrine approved.   *Harper vs. The Albany Mutual Ins. Co.,* 3 *Smith, N. Y. Rep.,* (17 *N. Y. Rep.,*) 194; *Bryant vs. The Pough. Mutual Ins. Co.,* 3 *Smith N. Y., p.* 200, *and 2d Halls,* 622.

*Second.*—The motion for a dismissal of the action upon the grounds stated ( *folios* 238–40,) was properly overruled.

The first ground of the motion is answered in Plaintiff's first point.   The other grounds of the motion presented questions of fact for the jury, and there was sufficient evidence to present them to the jury (see testimony of Nutting, Taylor and Brown, and also the other witnesses), and their finding thereon is not the subject of review.

The testimony shows that verbal notice of the fire was given to Ames, the Company's agent, a day or so after the fire, that Ames promised to visit the scene of the fire soon, and as the loss was heavy, requested claimants to wait until the adjusting agent, H. M. Magill, should come, which would be soon, and he would examine it and adjust it (W. W. Nutting's testimony, folios 127–8) ; that Ames did visit the place of fire with Brown, who told him all about it, and he examined the matter (Brown's testimony, folios 162–3) ; that said Magill came in about two weeks, was introduced to claimants as the general adjusting agent, by Ames ; that he then made a full examination of claimants' books, and all facts within their knowledge, took their statements and accounts, &c., in writing, also the affidavits of Taylor and Brown, informed them that they had done all that was necessary to present their claim, and promised to present the same to the Company, who would inform the claimants of their action thereon through Judge Ames ; that the Company did, on the 3d September, 1859, through Judge Ames, inform claimants that "their papers and claim had been carefully examined in all its bearings, and had been represented to them by H. M. M., in as fair a light as possible, so far as the evidence would warrant, and that they reluctantly, though *firmly*, denied the right of the parties to recover, and rejected the payment of the claim, on the ground that the policy was vitiated by the

act of the assured in keeping powder, and that their decision was a final one ;" that Brown afterwards called at the Company's office, at Cincinnati, and was informed of the same facts by their general agent, Mr. Magill, and was also refused permission to see the proofs that had been presented, on the ground that it was contrary to the views of the Company. (Vide letter of Mr. Magill, and the testimony of Nutting, Taylor and Brown.)

These facts fully warranted the jury in finding a waiver by the Company of any and all defects in the preliminary proofs, either as to the notice, the absence of the certificate, or in any other respect. . *Clark vs. New England Mutual Fire Insurance Co.,* 8 . *Cushing,* 343*; McMasters & Bruce vs. Westchester Co. Mutual Ins. Co.,* 25 *Wend.,* 379*; Martin vs. The Fishing Ins. Co.,* 20 *Pick.,* 389*; Angell on Fire Ins., sec.* 244, *p.* 265–6*; Cowan R.,* 404; 3 *Com. R.,* 122–128; 2 *Phill. Ins., p.* 492, *sec.* 1812; *Angell on Fire Ins., p.* 258, *s.* 229.

*Third.*—The decision, allowing secondary evidence, was correct.

1st.—Whether the proof of loss, &c., was sufficient to allow such evidence, was a question addressed to the discretion of the Judge exclusively, and his decision in such cases will not be reviewed unless the discretion has been grossly abused.

2d.—The amount of proof, and the degree of diligence required in the search, depends greatly . upon the circumstances of each case.

" Ordinary diligence in ordinary cases is enough." *Underwood vs. Lane,* 1 *Dev. Rep.,* 173–175; 2 *Caine's Rep.,* 367.; 1st *Caine's Cases in Er.,* 27; 16 *John's. Rep.,* 196; 2 *Sand. Rep.,* 542; 6 *Verm. Rep.,* 399; 1 *Green on Ev. page* . 670–1, *sec.* 558; *Cow. & Hill's Notes,* 3d *Ed., chap.* 6, *p.* 440, *Note* 247, *p.* 234, *Part* 2, *Vol.* 4, *and Cases there cited.*

GILFILLAN, AND SMITH & GILMAN, Counsel for Appellants.

F. R. E. CORNELL, Counsel for Respondent.

*By the Court.*—FLANDRAU, J.—The policy of insurance in this case was an ordinary printed form. The blanks were

filled, creating an insurance upon the following described property :

" Five thousand dollars on his stock of goods, consisting of a general assortment of dry goods, groceries, crockery, boots and shoes, and such goods as are usually kept in a general retail store, &c."

The policy contained printed conditions of insurance, also printed classes of hazards, arranged under the heads of " Not hazardous," " Hazardous, extra hazardous, and memorandum of special hazards."  It was stipulated in the printed part of the policy that if the premises in which the insured articles were, should be used for the purpose of carrying on or exercising therein any trade, business or vocation denominated hazardous, or extra-hazardous, or specified in the memorandum of special hazards, or for the purpose of storing therein any of the articles, goods or merchandize, denominated hazardous, extra-hazardous, or included in the memorandum of special hazards, except in the policy specially provided for, or afterwards agreed to, by the Company, in writing, to be added to, or endorsed on the policy, the same was to be void.

Among the goods denominated hazardous and extra-hazardous, were many, comprehended in terms in the articles specially insured, such as " grocers' stock," " sugars," " boots and shoes," &c.

Part of the memorandum of special hazards was in these words :

" MEMORANDUM OF SPECIAL HAZARDS."

" Gunpowder, phosphorus and saltpetre are expressly prohibited from being deposited, stored or kept in any building insured, or containing any goods or merchandize insured by this policy, unless by special consent *in writing* on the policy."

The policy also contained a condition that the insured, on sustaining loss or damage by fire, was to give notice to the Company, or its agents, make oath concerning the value of the property insured, the interest of the insured, and many other particulars usually stipulated for in such policies.   Also, a certificate was to be furnished of a magistrate, commissioner

of deeds or notary public of the good faith, &c., of the insured, which matters are called the "preliminary proofs."

It is unnecessary to refer to any of the other provisions of the policy, as those recited will present all the questions raised. The instrument did not differ in any material point from those generally in use.

The question made by the Defendant upon the sufficiency of the preliminary proofs is untenable. The acts of the Company constituted a waiver of any defect that existed in the proofs furnished. The local agent of the Company was notified verbally immediately after the fire, and he suggested delay until the arrival of the adjusting agent of the Company. Shortly after, this agent arrived, and made an examination of the books and accounts of the insured, expressed himsely satisfied, and took the affidavits of the parties. He told them that no more was required of them, but that he would present the claim to the Company. On the 3d of September following the Company addressed a letter to their local agent, near the scene of the fire, in which they place their refusal to pay the claim upon the sole ground that gunpowder was kept in the building at the time of the fire, and make no objection whatever about the insufficiency of the preliminary proofs. This is a waiver on their part of this condition. *Angell on Ins.*, secs. 242-5, *and cases there cited.*

There was sufficient proof of the authority of the adjusting agent, besides his acts and declarations, to go to the jury, and their finding will not be disturbed.

It appeared upon the trial that at the time of the fire the insured had among his goods, and kept in his store for sale, a small quantity of gunpowder, somewhere about twenty pounds, and it was further proved that gunpowder is an article that is ordinarily and usually kept in a general retail store in quantities varying from ten to fifty pounds.

Keeping an article for retail purposes in a store, is not *storing* such article within the meaning of the words of the policy prohibiting the storing within the building any articles, goods or merchandize denominated hazardous, extra-hazardous, or included within the memorandum of special hazards. The word storing in such cases has been held to denote " a

keeping for safe custody, to be delivered in the same condition as when received, and where the safe keeping is the principal object of the deposit ; and not a keeping for the purpose of consumption or sale, in the usual course of the business for which the building was occupied." *O'Niel v. The Buffalo Fire Ins. Co.*, 3 *Comst.*, 123, 7, 8; *N. Y. Eq. Ins. Co. vs. Langdon*, 6 *Wend.*, 623.

Did the policy authorize the keeping of gunpowder in the store for retail purposes without a special compliance with that clause of the memorandum of special hazards which prohibits it " unless by special consent *in writing* on the policy ?" In the interpretation of such instruments, it is always to be kept in sight, that the main portion of the policy, with all its conditions and restrictions, are in a printed form, intended to be sufficiently general to meet all cases, and prevent the necessity of drawing a policy for each risk taken, which would very much retard and embarrass the transaction of such business, and that the written part inserted by the parties, is more immediately expressive of their meaning and intention concerning the contract they are entering into, than the printed portion. There is a rule of construction, therefore, applicable to such instruments, which gives to the written portion of them controlling force, when there is any conflict or want of harmony between it and the printed stipulations. *Angell on Ins. p.* 11, *secs.* 14, 15.

The words used in this case, as descriptive of the property insured in the written part of the policy, were, " their stock of goods, consisting of a general assortment of dry goods, groceries, crockery, boots and shoes, and such goods as are usually kept in a general retail store." These words are broad enough to include any articles that are usually dealt in by persons engaged in keeping a general retail store. They are even less doubtful in their meaning than the words " stock in trade," which when applied to any specified business in a policy of insurance have been held to include not only the materials used, but everything necessary for carrying on that business. 1 *Phil. Ins.*, *sec.* 489; 2 *Hall*, 589; 14 *Barb.*, 383. And all such articles are just as clearly embraced in the policy as if each article thus necessarily used

was enumerated at length. Insurance companies must be deemed to be familiar with the materials necessary to the carrying on any trade or business, the "stock in trade" of which they insure, and in issuing the policy they must be deemed to have intended to include all such materials in the risk. *Harper vs. the Albany Ins. Co.*, 17 *N. Y. Rep.* 194, 7, 8.

In the case last cited, the insurance was upon the Plaintiff's "printing and book materials, stock, paper and stereotype plates and printed books, contained in certain buildings in the city of New York, therein described, and privileged for a printing office, bindery, and book store." The policy under the head of special rates, contained this provision : "Camphene, spirit gas, or burning fluid cannot be used in the building where insurance is effected, unless permission for such use be endorsed in writing upon the policy, and is then to be charged an extra premium." It appeared that camphene was used in the building for the purpose of cleaning the rollers employed by the Plaintiffs in inking their forms of type, wood cuts, &c., and that the fire was occasioned by the act of a plumber engaged in making some repairs, who accidentally threw a lighted match into a pan containing a small quantity of camphene. It was, however, held by the Court that the policy gave the Plaintiffs the privilege of keeping and using whatever was necessary to conduct the business insured against. *See also* 22 *New York Rep.*, 441.

This is a much stronger case than the one at bar. Here it is expressly stipulated that the insurance shall cover, besides the specially enumerated articles, "such goods as are usually kept in a general retail store." If, as the proof shows, gunpowder was an article usually kept in such stores, it is as much one of the articles insured as if it had been described at length. And both the insured and the underwriters must be presumed to have been aware of the fact that gunpowder was so usually kept when the insurance was effected.

In examining the cases cited by the counsel for the Defendant, we do not find any that conflict with the view we take of this policy, nor any that we feel disposed to question. Nor do we by our holding in this case, think that we relax any of the well settled rules of construction concerning such instru-

ments, nor weaken the effect of their conditions or restrictive clauses. We place our decision, as in the case in 17 *N. Y. Reports*, upon the ground that the article of gunpowder, mentioned in the memorandum of special hazards, was as much insured against as the dry goods, grocers' stock, boots and shoes, crockery, &c., which are mentioned under the name of " hazardous," and equally provided against in the policy. If therè can be a recovery for the one, there can be for the other.

The Court did not err in admitting the secondary evidence of the transfer of the claim to the Plaintiff. The loss of the instrument was proven sufficiently to allow proof of its contents. " It should be recollected that the object of the proof is merely to establish a reasonable presumption of the loss of the instrument, and that this is a preliminary inquiry, addressed to the discretion of the Judge." 1 *Greenleaf, Ev., s.* 558. There may be cases where suspicion is cast upon the fact of the loss, in which great diligence in the search would be required, but where no bad faith is attributable to the party asserting the loss, the establishment of a much less perfect case is sufficient.

The order denying a new trial must be affirmed.