## BAILEY v. AMERICAN CENT. INS. CO.

*(Circuit Court, D. Iowa, S. D.  June Term, 1882.)*

1. EQUITY—CORRECTING MISTAKE OF LAW.
    A mistake of law, made through the representations of an agent, may be corrected in equity.

2. SAME—MISTAKE IN INSURANCE POLICY.
    If an applicant for insurance correctly states his interest, and distinctly asks for an insurance thereon, and the agent of the insurer agrees to comply with his request, and assumes to decide on the form of the policy, and by mistake of law adopts the wrong form, a court of equity will reform the instrument so as to make it insurance upon the interest named.

3. INSURANCE—INTEREST INSURED—MAY BE ENHANCED.
    A change of title which increases the interest of the insured, whether the same be by sale under judicial decree or by voluntary conveyance, does not defeat the insurance, as, where the interest insured was that of a mortgagee, who afterwards obtains the full title.

In Equity.

This is an action in equity, brought to reform a policy of insurance and renewal certificate, and to recover judgment for a loss sustained thereunder. The facts appear as follows:

That on or about October 24, 1878, complainant held a mortgage for $1,200 on a certain dwelling-house and store-room in the town of Kahoka, Clark county, Missouri, the legal title being in John Wagner.

On that day complainant, through his agent, A. J. Mathias, applied to defendant for the insurance of his interest in such property in the sum of $1,000, and paid the necessary premium for the insurance of such interest for the term of one year; that afterwards, on December 5, 1879, the policy so taken out was renewed for another year, complainant paying the premium therefor. N. T. Cherry, a practicing attorney of some years' experience, was the agent of defendant, and acted for it in relation to such insurance, receiving the premiums, and writing up both the policy and renewal certificate.

Wagner had agreed with Bailey to keep the property insured for the benefit of complainant, as mortgagee, but failed to do so. Mathias, at the time he sought the insurance, communicated these facts to Cherry, and asked to have Bailey's interest insured by the policy. Cherry told him that he could issue such insurance, but the policy would have to be written in the name of Wagner, with loss made payable to Bailey. Mathias said he did not know how the policy should be written, but he wanted it to cover Bailey's interest as mortgagee, and he testifies that he at the time believed he was having Bailey's interest insured, and trusted. Cherry to write the policy correctly. Cherry wrote the policy, naming John Wagner as the assured, with this provision: "This company hereby agrees to recognize Noah Bailey as mortgagee under this policy; loss, if any, first payable to him as his interest may appear." He wrote the renewal certificate in the name of John Wagner, without any reference to Bailey. Bailey never authorized Mathias to insure Wagner, and nothing appears in the record showing that Wagner ever knew of the insurance.

On March 6, 1879, Bailey began a suit in the circuit court of Clarke county, Missouri, to foreclose his mortgage on the property insured, and such proceedings were had therein that on October 25, 1879, a judgment against Wagner and a decree of foreclosure against the property were entered by that court, and a special execution was afterwards issued, and on April 9, 1880, the property was sold thereunder to the complainant herein. Of these proceedings the defendant company had no knowledge. Upon November 24, 1880, the property insured, which was of greater value than the insurance named, was destroyed by fire. At the time of the original insurance Wagner was in possession of the property, and at the time of the fire it was occupied by tenants of Bailey. The policy contained the following provision: "If the property be sold or transferred, or upon the passing or entry of a decree of foreclosure, or upon a sale under a deed of trust, or if the property insured be assigned under any bankrupt or insolvent law, or any change take place in title or possession, (except in case of succession by reason of the death of the assured,) whether by legal process or voluntary transfer or conveyance, then and in every such case this policy is void."

Proof of loss was in proper time made by complainant, and forwarded to defendant. John Wagner was made a party defendant, but failing to appear, a decree *pro confesso* was entered against him at the May rules.

*Hagerman, McCrary & Hagerman,* for complainant.
*W. J. Fulton* and *H. Scott Howell,* for respondent.

McCRARY, C. J.   The policy upon its face is for the insurance of John Wagner against loss by fire upon a certain building, and contains a provision recognizing the complainant, Noah Bailey, as mortgagee, and agreeing to pay the loss, if any, in the first instance to him, as his interest may appear.   It is insisted on the part of complainant that this does not express the contract as intended by the parties; that it was so written by mistake; that the contract was for the insurance of the interest of Bailey as mortgagee, and not to insure Wagner's interest at all and that it should be reformed so as to express that contract.   The proof is that Wagner was the owner of the fee of the realty, and that Bailey held a mortgage upon it; that Wagner had agreed to insure it for the protection of Bailey, but had failed and refused to do so; and that thereupon Bailey applied to respondent for insurance upon his interest as mortgagee.   This application was made to the respondent through its agent, N. T. Cherry, who was a lawyer engaged in the practice of his profession, as well as an insurance agent, and who informed complainant's agent that it would be necessary to write the policy in the name of Wagner, loss, if any, payable to complainant.   The complainant and the agent who acted for him were ignorant of the law upon the subject, and left it to Cherry to say what the form of the policy should be; but they did not fail to advise him that Wagner had failed and refused to insure the property, and that complainant desired an insurance upon his own interest as mortgagee.

Complainant paid the premium.   Wagner paid nothing; authorized no one to obtain insurance in his name; and, so far as appears, had no notice that his name was used.

That the interest of a mortgagee is an insurable interest is admitted, and it follows that the policy might have been issued in the name of Bailey, and might have expressed a contract for the insurance of his interest as mortgagee.

The agent, Cherry, was therefore mistaken if he believed that, as a matter of law, it was necessary to write the policy in the name of the owner of the fee.

Where a mortgagee applies to the agent of an insurance company and states plainly his wish to obtain insurance alone upon his interest as mortgagee, requests the agent to write the policy so as to effect this purpose, and relies upon him to determine as to what form is necessary under the law of insurance for that purpose, this court holds that the agent is bound to write a policy which shall insure the mortgagee's interest in his own name.   This is not denied, but it is said

that the parties in this case all understood that the policy was to be in Wagner's name; that it was understood and agreed between them that the policy should be written just as it is. It is very evident that the policy was not applied for on behalf of Wagner, and that it was not the intention of the complainant to obtain a policy upon Wagner's interest. He (Wagner) was not present in person or by agent; he paid nothing and agreed to pay nothing; the use of his name was unauthorized by him.

Complainant had certainly no interest in procuring insurance for Wagner, and the latter's name was used only for the reason that Cherry asserted, and complainant's agent believed, that this was necessary as a means of insuring complainant's interest as mortgagee. It was not necessary for that purpose, and therefore the policy was so drawn by mistake, and whether a mistake of law or a mistake of fact is under the circumstances immaterial. The most that can be said in behalf of the respondent is that the complainant, through his agent, made a mistake of law through the representations of Cherry, who was a lawyer as well as an insurance agent, and in such a case a mistake of law may be corrected in equity. *Sims* v. *Ins. Co.* 8 Fed. Rep. 183, opinion by *Lowell*, C. J. See, also, *Keith* v. *Globe Ins. Co.* 52 Ill. 518; *Snell* v. *Ins. Co,* 98 U. S. 85; *Oliver* v. *Ins. Co.* 2 Curt. C. C. 277; *Woodbury Savings Bank* v. *Ins. Co,* 31 Conn. 517; *Longhurst* v. *Ins. Co.* 19 Iowa, 364.

We regard it as well settled by authority, and well supported by reason, that if the applicant correctly states his interest and distinctly asks for an insurance thereon, and the agent of the insurer agrees to comply with his request, and assumes to decide upon the form of the policy to be written for that purpose, and by mistake of law adopts the wrong form, a court of equity will reform the instrument so as to make it insurance upon the interest named. Such a doctrine is eminently just and equitable, since the insurance company always prepares the contract, and inserts therein its own terms.

It remains to be determined whether the policy as reformed has been broken. It provides that "if the property be sold or transferred, or upon the passing or entry of a decree of foreclosure, or upon a sale under a deed of trust, * * . * or any change take place in title or possession, * * * whether by legal process, or judicial decree, or voluntary transfer or conveyance, * * * in every such case this policy is void." It appears that complainant has foreclosed his mortgage upon the property insured, having ob-

tained a decree for that purpose in October, 1879, in one of the courts of Missouri, and in April, 1880, he bought in the premises under a special execution issued thereon and took possession as such purchaser. At the time of the fire his tenants were in possession.

It is now insisted that this foreclosure and sale, and complainant's purchase and entering into possession, defeat the policy,' because there was a decree of foreclosure, and a change of title and possession. Provisions in insurance policies substantially the same as the one above quoted have frequently been the subject of judicial consideration, and they have generally, if not uniformly, been held to provide against a diminution of the interest of the assured and not against its increase.

Thus, in *Heaton* v. *Ins. Co.* 7 R. I. 503, where the policy was for the insurance of a mortgagee's interest, and provided that "if the said property shall be sold or conveyed this policy shall be null and void," it was held to refer to such a sale or conveyance by the assured, determining his interest in the subject of insurance and not to a sale or conveyance to him, to the increase of his interest in it. And see *Lockwood* v. *Ins. Co.* 47 Conn. 564; *Inbush* v. *Ins. Co.* 4 Ins. L. J. 545.

The policy, being upon the interest of the mortgagee, is not affected by any alienation by the owner of the fee, for the reason that it is a distinct and independent contract for indemnity between the mortgagee and the insurance company. *Foster* v. *Ins. Co.* 2 Gray, 216.

In the case of *Humphrey* v. *Ins. Co.* 15 Blatchf. 504, the terms of the condition respecting alienation were in substance the same as in the policy now under consideration, and it was held that as the contract was with the mortgagee for the insurance of his interest, no alienation by another person, of the property in respect of which the insurance is effected, can affect or prejudice his rights. And see Wood, Fire Ins. 863, where the same rule is laid down.

The purpose of the provision in question is to require the assured to retain his interest in the property, and it has been construed to mean that if at the time of the fire he has no interest he cannot recover. Wood, Fire Ins. § 325, p. 552; 4 Wait, Ac. & Def. 51.

At all events, it seems clear, both upon reason and authority, that a change of title which increases the interest of the assured, whether the same be by sale under judicial decree or by voluntary conveyance, does not defeat the insurance. This is especially true of a

case like the present, where the insurance is upon the interest of a mortgagee. In such a case the parties must have contemplated the possibility, at least, that the mortgage would be foreclosed, and the full title and right of possession pass to the mortgagee. The defendant was bound to expect that complainant would foreclose his mortgage if his debt was not paid at maturity. It must be remembered that the foreclosure, sale, and change of title and possession complained of, are the necessary result of the proceedings to enforce the very mortgage which complainant held upon the property when he applied for the insurance, and that it was for the purpose of insuring his interest under it that he applied for and obtained the policy now in question. Of course, under such circumstances, the defendant must be charged with notice of the mortgage, and with a knowledge of the fact that the foreclosure sale and consequent change of title and possession was to be anticipated.

If this is not so, then we are obliged to assume that defendant was justified in believing that the complainant, when he insured his interest as mortgagee, did not intend to assert his rights under the mortgage. What we have said applies also to the change of possession against which the policy provides. It does not mean such a change of possession as would result from the enforcement according to law of the mortgage which complainant held upon the property at the time of the insurance, and of which the defendant had full notice. When the complainant applied to defendant for insurance upon his interest as mortgagee, and the defendant after investigation accepted the risk, it is not too much to say that defendant contracted with full knowledge that complainant had a right under his mortgage to foreclose, if the debt was not paid at maturity; to sell the premises under special execution after obtaining decree of foreclosure; to buy the premises at such sale and to take possession as such purchaser. And defendant was bound to know that none of these rights given by the mortgagee were waived by taking out the policy of insurance. It follows that the several provisions above quoted, respecting change of title and possession, refer to some change other than that which would necessarily follow from the enforcement of the complainant's well-known rights under the mortgage. If this were not so, the complainant in every such case would be reduced to the necessity of deciding between a waiver of his rights as mortgagee and the abandonment of his rights as policy-holder. This view is the only one that is entirely consonant with equity.

The defendant received complainant's money and has kept it, and ought to comply with its contract.

Decree for complainant.

NOTE.

1. The power of a court of equity to reform written instruments upon the ground of mistake is indisputable. Equity will correct errors, but of course cannot make new contracts. *Casaday* v. *Woodbury*, 13 Iowa, 113. Hence a contract must have been made, and by a *mutual* mistake of the parties incorrectly reduced to writing. *Lanier* v. *Wyman*, 5 Rob. (N. Y.) 147; *Sutherland* v. *Sutherland*, 69 Ill. 481; *Evarts* v. *Steger*, 5 Or. 147; Wood, Fire Ins. 800, and cases.

It has been asserted that a mistake of law is not ordinarily a ground for relief in equity. *Mellish* v. *Robertson*, 25 Vt. 603; *Lyon* v. *Sanders*, 23 Miss. 530; *Shafer* v. *Davis*, 13 Ill, 395; *Kenyon* v. *Welby*, 20 Cal. 637; *Hunt* v. *Rousmaniere's Adm'rs*, 1 Pet. 1. But, as stated by one eminent writer, "of late years the disposition of courts and text writers seems to qualify the propositions by many exceptions, and no little difference of opinion, perhaps, exists as to whether it can now even be asserted as a general rule." Bispham, Principles of Equity, § 187. This author makes the distinction that a mistake as to the general law is irremedial, but that a mistake of law in regard to individual rights may be redressed. Id.; and see *Cooper* v. *Phibbs*, L. R. 3 H. L. 149; S. C. below, 17 Irish Ch. 82. He also states that relief will be granted in equity against mistakes of law in "cases where the law is confessedly doubtful, and one about which ignorance may be well supposed to exist." Id.; and see *Daniell* v. *Sinclair*, L. R. 6 Ap. Cas. 181.

That a mistake of law will be relieved against in equity has been announced by much authority. *In re Saxon Assurance Co.* 2. J. & H. 408; *Broughton* v. *Hutt*, 3 De G. & J. 501; *In re Condin*, L. R. 9 Ch. Ap. 609; *Stone* v. *Godfrey*, 5 De G., M. & G. 90; 1 Story, Eq. Jur. §§ 138e, 138f; *Harney* v. *Charles*, 45 Mo. 157; *Northrop* v. *Graves*, 19 Conn. 548.

Whatever the true rule may be, there can be no question of the doctrine asserted in the principal case, where the representative of the insurance company, a practicing attorney, believes, and induces the insured to believe, that a certain form of a policy correctly insures the interest sought to be covered; that such a mistake, whether considered as one of law or as a combined mistake of law and fact, will be speedily corrected in equity and the policy reformed. See cases cited in the opinion, and especially *Snell* v. *Ins. Co.* 98 U. S. 85; also *Knox* v. *Lycoming Ins. Co.* 7 N. W. Rep. (Wis.) 776; *Equitable Ins. Co.* v. *Hearne*, 20 Wall. 494; Wood, Fire Ins. 796 *et seq.*

If the insured have knowledge of the mistake in the policy, he should move to reform it at once, or else his laches will defeat his right. *Graves* v. *Boston Marine Ins. Co.* 2 Cranch, 419; *Paddock* v. *Com. Ins. Co.* 104 Miss. 521; *Thwing* v. *Great Western Ins. Co.* 111 Mass. 110; *Conant* v. *Perkins*, 107 Mass. 79. But the mere possession of the policy as written for any length of time does not constitute laches, unless the insured knows that the policy incorrectly describes the contract of insurance. *Snell* v. *Ins. Co.* 98 U. S. 85.

The proceedings to reform may be brought as well after loss as before, and, upon reformation, judgment may be had in the same action for the amount due. See cases cited in the opinion; also, Wood, Fire Ins. 809, and cases; *Herbert* v. *Mut. Life Ins. Co.* 15 C. L. J. 93, and cases.

2. It is well settled that a mortgagee has an insurable interest in the property covered by the mortgage. Wood, Fire Ins. 529; *Holbrook* v. *Am. Ins. Co.* 1 Curt. C. C. 193; *Davis* v. *Quincy, etc., Ins. Co.* 10 Allen, (Mass.) 113; *Fox* v. *Phœnix Ins. Co.* 52 Me. 333; *Traders' Ins. Co.* v. *Robert,* 9 Wend. (N. Y.) 404; *Ins. Co.* v. *Updegraff,* 21 Pa. St. 513; *Ins. Co.* v. *Stinson,* 103 U. S. 25; *King* v. *State Mut. Ins. Co.* 7 Cush. 4; *Carpenter* v. *Prov. Wash. Ins. Co.* 16 Pet. 495.

As well stated by an able text writer: "The right of a mortgagee to insure the premises to the amount of his debt, *is the lien given upon the property by the conveyance as security for the payment of the debt;* yet the *insurance* is in no sense *an insurance of the debt,* but of the mortgagee's interest in the property *as security for the debt."* Wood, Fire Ins. 863; *King* v. *State Mut. Ins. Co.* 7 Cush. 4.

Where a mortgagor insures in his own name, with a provision that the loss be paid to a mortgagee as his interest may appear, the insurance is that of the mortgagor. Making the loss payable to the mortgagee, is nothing more nor less than an appointment of the mortgagee by the mortgagor as his agent to collect the money. The effect is the same as an assignment of the policy after loss. Wood, Fire Ins. 863; *Carpenter* v. *Prov. Wash. Ins. Co.* 16 Pet. 495; *King* v. *State Mut. Ins. Co.* 7 Cush. 4.

Many persons may have insurable interests in the same property. Thus the owner of the fee may insure, and so may the mortgagee, (Wood, Fire Ins. 529;) yet this is in no sense a double insurance, for the simple reason that the insurance is not upon the same interests; (Wood, Fire Ins. 862.) Therefore, if a mortgagor insure his interest, and there is a provision in the policy to the effect that the policy should become void if there is other insurance, an insurance by a mortgagee of his interest in the same property would not avoid the policy. *Woodbury, etc., Bank* v. *Charter Oak Ins. Co.* 31 Conn. 517; *Nichols* v. *Fayette Ins. Co.* 1 Allen, (Mass.) 63; *Foster* v. *Eq. Mut. Ins. Co.* 2 Gray, 216; *Ins. Co.* v. *Stinson,* 103 U. S. 25. So the rule is general that insurance upon the same property by persons holding other and different insurable interests would not constitute additional insurance. *Ætna Ins. Co.* v. *Tyler,* 16 Wend. (N. Y.) 507; *Acer* v. *Merchants' Ins. Co.* 57 Barb. (N. Y.) 68; *Mut. Safety Ins. Co.* v. *Hone,* 2 N. Y. 235; *Wells* v. *Phila. Ins. Co.* 9 Serg. & R. (Pa.) 103. It will be readily seen that the reason upon which this doctrine rests is that, "in order to amount to other insurance, *the interests covered by the policies must be identical."* Wood, Fire Ins. 597, 862. As decided in the principal case, the same reason exists for the rule there adopted.

Where a policy is conditioned to be void upon a change of title, and it is written in the name of the mortgagor, with a provision that the loss be paid to the mortgagee, it has been seen that the insurance is upon the mortgagor's interest. Hence, if there is a foreclosure of the mortgagor's interest, or a voluntary transfer of his equity of redemption to the mortgagee, this is such a

change of title as avoids the policy, because the interest insured no longer exists. *Bilson* v. *Ins. Co.* 7 Am. Law Reg. 661; *Fitchburg Sav. Bank* v. *Amazon Ins. Co.* 125 Mass. 431; *Campbell* v. *Hamilton, etc., Ins. Co.* 51 Me. 69; *Lawrence* v. *Holyoke Ins. Co.* 11 Allen, (Mass.) 365; Wood, Fire Ins. 863, and cases; 4 Wait, Ac. & Def. 51. But if the insurance is upon the mortgagee's interest, then a change of title out of the mortgageor does not avoid the policy, because the interest of the insured is not affected; neither does a purchase by the mortgagee of the mortgageor's interest avoid the policy, for the provision against a change of title is held to mean such a change of title as leaves the insured without an insurable interest, and not to such a change as increases this interest. See authorities cited in the opinion; also *Bragg* v. *N. E. Ins. Co.* 25 N. H. 289. Surely no hardship can result to the insurer from such a doctrine. The contract to insure a certain interest has been made; an increase of the interest does not increase the insurance, but should require all the more care on the part of the assured towards protecting the property. No matter what the change of title is, so long as there remains an insurable interest in the assured, the policy is not avoided. *Scanlon* v. *Union, etc., Co.* 4 Biss. 511.

In accordance with this principle it has been held that, even where the assured, during the existence of the policy, sells the property, yet if afterwards, and before the fire, he reacquires the title, the policy is renewed, and in case of loss the company held liable. *Lane* v. *Maine, etc., Co.* 12 Me. 44; *Power* v. *Ocean Ins. Co.* 19 La. Ann. (O. S.) 28; *Worthington* v. *Bearse,* 12 Allen, 382; *Hitchcock* v. *N. W. Ins. Co.* 26 N. Y. 68; *Mackey* v. *Ins. Co.* (U. S. C. C. Dist. Iowa,) MSS.

The learned judge who delivered the opinion in the principal case asserted a doctrine, the justness of which cannot be well controverted. It was this: That if the company insure the interest of a mortgagee, it must have been anticipated that when the debt secured should become due that there would be a foreclosure and sale if the debt remained unpaid, and therefore a technical defense that the policy had become forfeited by acts which were necessarily anticipated should not be permitted. When it is remembered that the conditions of a policy are usually, if not always, in printed form, it may well be doubted whether such a defense is allowable. If permitted, we would have a state of things aptly described by Chief Justice Ryan in *Appleton Iron Works* v. *Brit. Am. Ins. Co.* 46 Wis. 23. That great jurist said: "If the crafty conditions with which fire insurance companies fence in the rights of the insured, and the subtle arguments which their counsel found upon them, were always to prevail, these corporations would be reduced to the single functions of receiving premiums, with little or no risk."

Although the doctrine declared by Judge McCrary is probably the first time it has been presented in a case of that kind, yet principles analogous have been often laid down. Thus, where a policy covers a stock of goods, or materials used in certain lines of business, conditioned that the keeping or use of certain articles shall avoid the policy, yet if the keeping or use of the prohibited article was only as usually kept or used in the line of business of the insured, or as composing part of such a stock as is insured, then such keeping or use would not avoid the policy, for the reason that the insurer must,

at the time of issuing the policy, have known or contemplated what goods would be kept or used by the insured as incident to property mentioned in the policy. *Steinback* v. *La Fayette Fire Ins. Co.* 54 N. Y. 98; *Whitmarsh* v. *Conway Ins. Co.* 16 Gray, 359; *Elliott* v. *Hamilton Mut. Ins. Co.* 13 Gray, 139; *Harper* v. *N. Y. Ins. Co.* 22 N. Y. 441; *Harper* v. *Albany Ins. Co.* 17 N. Y. 194; *Franklin Ins. Co.* v. *Updegraff,* 43 Pa. St. 350; *Archer* v. *Merchants', etc., Co.* 43 Mo. 434; *Phœnix Ins. Co.* v. *Taylor,* 5 Minn. 492; Wood, Fire Ins. 368–376. But see *Steinbach* v. *Ins. Co.* 13 Wall. 183. So, where a policy issued on an unoccupied building was conditioned to be void in case it should become vacant, it has been held that if the insurer knew at the time of issuing the policy that the premises were vacant, such knowledge would be a waiver of the condition. *Williams* v. *Niagara Ins. Co.* 50 Iowa, 561. Many other cases might be cited where policies were issued by the insurers with the knowledge that certain conditions had not been complied with, and the courts held that the conditions had been waived, or that the companies were estopped from insisting upon a violation thereof. Wood, Fire Ins. 832–840.

Provisions in policies that in case of a foreclosure against the property insured the insurance should be avoided, have been construed to mean such a decree of foreclosure that in and of itself changes the title, and without sale dispossesses the insured of all interest. *Kane* v. *Hibernia Ins. Co.* 38 N. J. 441; *Ins. Co.* v. *O'Maley,* 82 Pa. St. 400; *Pennebaker* v. *Tomlinson,* 1 Tenn. Ch. 598. And a policy conditioned to become void in case of sale or transfer by legal or judicial decree or voluntary act, issued at a place where the law allows redemption from all sales by judicial authority, is construed to apply only to completed sales, and that where the loss occurs before the expiration of the time of redemption the policy is not avoided. *Hammel* v. *Queen's Ins. Co.* 11 N. W. Rep. (Wis.) 349; *Loy* v. *Home Ins. Co.* 24 Minn. 315; *Strong* v. *Ins. Co.* 10 Pick. 40.

A provision avoiding the policy in case of an execution being levied upon the property insured has reference only to personal property, because in practice in most of the states there is no such thing as a levy upon real estate which interferes with its use or possession. *Hammel* v. *Queen's Ins. Co.* 11 N. W. Rep. (Wis.) 349; *Shafer* v. *Phœnix Ins. Co.* 10 N. W. Rep. (Wis.) 381; *Colt* v. *Phœnix Ins. Co.* 54 N. Y. 595; *Ins. Co.* v. *O'Maley,* 82 Pa. St. 400; *Pennebaker* v. *Tomlinson,* 1 Tenn. Ch. 598; May, Ins. 269; Wood, Fire Ins. 552. FRANK HAGERMAN.

*Keokuk, Iowa, August* 29, 1882.