## James K. Fisher
## v.
## Lillie G. Cook.

*Personal Injuries—Fall into Elevator Shaft—Parties Defendant— Where One of Two May Be Sued Separately—Plea in Abatement—Order Striking from Files—Negligence—Evidence—Instructions—Printed Abstract.*

1. If several persons jointly commit a tort, the plaintiff has an election to sue all or some of the parties jointly, or one of them separately.

2. Where, in order to support an action, a contract need not be stated, but the tort sued for is a breach of a duty imposed by law, and the gravamen of the action is a misfeasance, the plaintiff may recover against one tort feasor without joining the other with him as defendant.

3. In an action to recover for a personal injury, received by plaintiff from falling into an elevator shaft, against one of the two owners of the building, it is *held:* That the suit was not for the omission of a duty growing out of the ownership of the building; that the defendant could not plead

in abatement the non-joinder of the other owner; that an order striking such a plea from the files was proper; that the question of negligence, both on the part of the plaintiff and defendant, was for the jury to determine from all the evidence; that the evidence sustains the verdict for the plaintiff; and that the law seems to have been properly given to the jury, although this court declines to discuss the instructions in detail, as they do not appear in the printed abstract.

[Opinion filed November 9, 1887.]

APPEAL from the Circuit Court of Cook County; the Hon. JOHN C. BAGBY, Judge, presiding.

Messrs. ASAY, ASAY & RICE, for appellant.

Mr. J. A. SLEEPER, for appellee.

BAILEY, J. This was an action on the case, brought by Lillie Gillette Cook against James K. Fisher, to recover damages for a personal injury received by the plaintiff from falling into an elevator shaft, in a building situated on Michigan Avenue, Chicago, known as the Beaurivage. The trial before the court and a jury resulted in a verdict and judgment in favor of the plaintiff for $3,000.

No question is made here as to the fact or the severity of the plaintiff's injury, nor is there any controversy in relation to the measure of the damages awarded her by the jury, the contention being, that under the pleadings and evidence there should have been no recovery against the defendant.

The original declaration, which was filed March 1, 1879, alleged that the defendant, at the time of said injury, occupied and possessed said building, with the appurtenances; that in said building there was a certain elevator for carrying passengers from one floor to another; that the defendant wrongfully and unjustly permitted the doors and openings in said elevator to be and continue, and the same were so badly, insufficiently and defectively guarded, protected and closed, that by means thereof, and for want of a proper and sufficient door, protection and guard to said openings, the plaintiff, who

was then and there passing in and along the hallway of said building and by the said opening, then and there necessarily and unavoidably slipped and fell into said opening, and thereby received said injury. To this declaration the defendant pleaded not guilty, and a trial of the issues thus formed having been entered upon, leave was given to the plaintiff to withdraw a juror and to amend her declaration.

On the 19th day of May, 1883, the declaration was amended by filing two additional counts. The first of said counts alleged, in substance, that, at the time of said injury, the defendant owned and was possessed of the building in question, said building being divided into flats for the occupation of families and persons; that in said building was an elevator kept and used for the convenience of the occupants of the several apartments on the several floors of said building, the elevator shaft having openings for doors on the several floors of said building, by and through which persons desiring to use said elevator were accustomed to enter and depart therefrom; that on that day the plaintiff, with her father and mother, was occupying one of the flats in said building; that she was and for a long time had been accustomed to use said elevator as a means of going to and from said apartments; that at the time of the injury, the plaintiff had occasion to go from the street to said apartments, and for that purpose went to said elevator; that when she arrived there, the door into the elevator on that floor was closed, and the person in charge of the elevator and whose duty it was to run the same, was there, and then and there opened the door for her to pass through into the elevator to be carried to the floor on which her apartments were situated; that the plaintiff, not knowing that the elevator was not there ready for use, but believing that it was there and that she could safely enter said door, and without fault on her part, and relying, as she reasonably might, and in fact did, upon the act of said servant in opening said door, stepped through said door, and by reason of the elevator not being at said door, but, through the negligence and carelessness of the defendant and his servants, being at some point above said door, the plaintiff fell to the bottom of said shaft and received said injury; that the defendant

himself assumed and had the management and control of said elevator, and by himself, his servants and agents, managed and controlled the running of the same for the convenience and use of the occupants of said building and others having occasion to ascend and descend thereon, and that the person so having charge of said elevator was in the employ and service of the defendant, and acted for him and was subject to his direction and control.

The second additional count alleged that on the day in question, the plaintiff applied to the defendant's servant to convey her by said elevator from the ground floor of said building to the floor on which the apartments occupied by the plaintiff were situated; that said servant carelessly opened the door of said elevator when the cab was not there for plaintiff to enter, and carelessly and negligently permitted her to enter therein, and allowed the plaintiff to go into said shaft through said open door without notice to or knowledge by the plaintiff that the cab was not there; that the plaintiff relied upon said servant and his knowledge of the situation of said cab, and believed that the cab was there, and was encouraged by said servant's opening said door as aforesaid to enter, and without any carelessness on her part, entered said elevator and fell and was injured.

No further steps were taken in the case until September 17, 1883, at which date the defendant filed a plea in abatement "as to the amendments to the said declaration," alleging that the building and property mentioned in the declaration was the joint property and in the joint possession of the defendant and one Archibald Fisher, who was still living, and that the servant, mentioned in the declaration, was, at the time, etc., in the joint employ of the defendant and said Archibald Fisher. On motion of the plaintiff, this plea was stricken from the files, and the order of the court striking the same from the files is assigned for error.

It is clear that the plea in abatement presented no defense. The general rule is, that if several persons jointly commit a tort, the plaintiff has his election to sue all or some of the parties jointly, or one of them separately, because a tort is in

its nature a separate act of each individual. Therefore, in actions in form *ex delicto*, as trespass, trover or case for malfeasance, against one only, for a tort committed by several, he can not plead the non-joinder of the others in abatement or in bar, or give it in evidence under the general issue. 1 Chitty's Plead. 97. An exception to this rule is, where an action on the case is brought merely for the non-performance of a contract. There, in order to support the action, a contract must be proved, and is the basis of the suit; and the defendant may plead the non-joinder of one of the joint contractors in abatement, for it is not competent for the plaintiff to obviate the rules of law with regard to parties to be sued upon the contract, merely by varying the form of his action, where in substance, it is founded on the agreement. But it must appear from the declaration that the gist of the action is for a breach of contract. *Ibid.*, 98. Another exception is, where one tenant in common of realty is sued in trespass or case for anything respecting the land held in common. There he may plead the non-joinder of his co-tenant in abatement. *Ibid.*, 98; Sumner v. Tileston, 4 Pick. 308.

We are of the opinion that the case made by the declaration does not fall within either of these exceptions. There is no pretense of any contract the breach of which resulted in the injury complained of, nor is the case one where it is necessary to allege a contract in order to recover. The declaration alleges merely a legal duty on the part of the defendant to control and operate the elevator with reasonable care. That duty grows out of his possession of the building, his assumption of control over the elevator, and his undertaking to operate it for the convenience of the occupants of the building and others wishing to make use of it. The tort sued for is not a non-feasance but a misfeasance. The rule is, that where, in order to support an action, a contract need not be stated, but the tort sued for is a breach of a duty imposed by law, and the gravamen of the action is a misfeasance, the plaintiff may recover against one tort-feasor without joining the other with him as defendant. Wright v. Geer, 6 Vt. 151.

Nor does the injury complained of grow out of anything

done to or respecting the realty held in common by the defendant and another, within the meaning of the second exception above noted. The true distinction in such cases is stated in Barbour on Parties, 318, as follows: "If the parties committing a tort are the joint owners of the land, and the tort consisted of the commission of some act which, as such owners, they were bound to perform, they must be joined in the action, as, in such cases, the title to realty will come in question; that is, whether the defendants, by reason of their ownership, were bound to perform the act, for the omission of which the action was brought. If, however, the act complained of consists of a malfeasance, as if the defendants have erected a nuisance on their land, no advantage can be taken of the non-joinder, for in such case their title can not come in question, and they are equally liable whether they have a right to the land or not." Low v. Mumford, 14 Johns. 426; Sumner v. Tileston, *supra*.

The suit is not for the omission of a duty growing out of the ownership of the building, or of any act which the owners were bound, by reason of their ownership, to perform, but an affirmative act of malfeasance, having no dependence upon or necessary connection with the ownership of the building. As the case then falls within none of the recognized exceptions to the general rule, the tort must be held to be several, and it accordingly follows that the plea presented no defense, either in abatement or in bar.

It may well be doubted whether the plea, being dilatory in its nature, was not filed too late. If such was the case, the proper practice was to order it stricken from the files. But we prefer not to put our decision on that ground. So long as the plea presented no defense, but was merely frivolous, the order striking it from the files has wrought the defendant no injury and affords him now no just ground of complaint.

At the trial it was admitted by stipulation that the acts alleged in the plea in abatement were true, and the defendant thereupon attempted to avail himself before the jury of the non-joinder of Archibald Fisher as a defense under the plea of not guilty. Several instructions were also asked by the defend-

ant, submitting such defense to the jury, which were refused. Said non-joinder being no defense, it was properly ruled out.

We are of the opinion that the evidence was sufficient to sustain the verdict. The stipulation admitting the truth of the averments of the plea in abatement established the relation of master and servant between the defendant and the person having charge of the elevator at the time of the plaintiff's injury. As to the precise circumstances of the injury, the evidence is somewhat conflicting, the testimony of the plaintiff and of Miss Steele, a young lady who was with her at the time, being contradicted in some respects by that of the defendant's servant in charge of the elevator. The plaintiff testified, in substance, that at the time of the injury she and Miss Steele were returning from breakfast, it being about ten o'clock in the forenoon of a bright sunny day. The entrance to the building was through a court or drive-way leading from Michigan Avenue to a door opening into an entrance or hall-way, on one side of which hall-way was the door to the elevator. As the plaintiff and her companion came up the street they saw the elevator boy standing outside of the entrance. The plaintiff and Miss Steele went into the hall-way and stood before the elevator door for a minute or two while the elevator boy went to the office for his key. The elevator door, unlike the doors of most elevators, swung outwardly, and as the elevator boy came to the door he opened it wide and stood behind it, and the plaintiff being nearest the entrance stepped in, and the elevator cab not being there, but being two or three stories above them, she fell to the bottom of the shaft and received said injury. In all material particulars the plaintiff is corroborated by the testimony of Miss Steele. It appears that the elevator door was a wire screen, but it appears from the testimony of both of said witnesses that the hall-way was rather dark, especially for persons who had just come in from the bright sunlight out of doors, and that they did not observe, therefore, that the elevator cab was not at the lower floor.

The elevator boy testified, on the contrary, that when the plaintiff and her companion came up, he was standing at the

elevator; that the plaintiff was ahead and was running from her friend trying to get away; that while witness was opening the door the plaintiff was by his side; that witness noticed that the elevator was not there, and held out his hand to the plaintiff, saying to her, " Just wait a moment," and that she failed to heed the warning, but stepped around and fell in. Both the plaintiff and Miss Steele deny that the elevator boy gave any warning, either by words or gesture.

The jury manifestly gave credence to the account of the transaction given by the plaintiff and Miss Steele, and taking that account as true, it is impossible to acquit the defendant's servant of the charge of very great negligence. He was in charge of the elevator, and was presumed to know its· situation, and it was culpable carelessness on his part to swing the door open, he at the same time stepping back and standing behind it, and thus give an invitation to the plaintiff to enter, while the elevator was not there. She had a right to rely upon his superior knowledge of the situation and act accordingly. Some attempt is made to charge her with negligence in not looking through the open net-work of the elevator door while standing before it and thus ascertain for herself whether the elevator was down. It seems, however, to have been so dark as to make it quite difficult to distinguish objects inside the hall-way, and it does not appear that the plaintiff's attention was specially called to the matter of looking to ascertain the whereabouts of the elevator. If she had actual knowledge of its situation, or by the exercise of ordinary care would have known it, her conduct was clearly negligent. But if, after having exercised ordinary care, she was in ignorance of its position, she had a right to rely upon the knowledge and judgment of the person in charge, and her stepping in at his invitation was not, in our opinion, such negligence as should bar a recovery. The question of negligence, both on the part of the plaintiff and defendant, was for the jury to determine from all the evidence, and we are unable to say that they have misconstrued the evidence, or that their verdict is not fully supported by it.

The defendant's counsel asked a large number of instruc-

tions, ten of which, at least, were given as asked.   A number of others were refused, and it is urged that such refusal was error.   Some of the refused instructions are perhaps not obnoxious to serious criticism, but whether they were properly refused may depend upon whether the same propositions in substance are embodied in the instructions given.   The counsel for the defendant has not seen proper to include in his printed abstract any of the instructions given at the instance of the defendant, and we therefore decline to discuss the instructions in detail, but content ourselves with saying  that so far as we have examined them  the law seems to have been properly and satisfactorily given to the jury  and that there is no error in that respect.

As we find no error in the record, the judgment will be affirmed.

*Judgment affirmed.*