KAPPES, Appellant, v. BROWN SHOE COMPANY, Respondent.

St. Louis Court of Appeals, December 12, 1905.

1. **MASTER AND SERVANT: Elevator: Carrier of Passengers.** In a factory of several stories, where the employees working on the upper stories were permitted to ride on an elevator used for carrying freight, in going to and from their work, and where the factory was provided with stairways, the relation of the employer to the employees while using the elevator for that purpose was that of master and servant.

2. ———: ———: **Degree of Care.** The degree of care required of the employer in such case, in the construction and operation of the elevator, was ordinary, and he was not required to provide such elevator with appliances and inventions which the proprietor of a passenger elevator must provide, and an employee using it assumed the risk incident to its use when constructed and operated with ordinary care.

3. ———: ———: **Appliances.** A factory was provided with an elevator for the purpose of carrying freight, and the employees on the upper floors were permitted to ride upon it in going to and from their work. The gate opening into the elevator shaft could be opened from the outside. While the employees were crowding about the gate waiting for the elevator to descend some of them raised the gate and a number were pushed

through by the crowd and fell into the shaft and were killed. *Held*: in an action by the mother of one of the employees thus killed, against his employer for damages on account of the death, that the defendant was not negligent in failing to provide an inside or automatic fastening for the gate; since the evidence showed the elevator had been used in that way for five years without an accident the employer had no reason to apprehend that the gate would be opened in that way so as to cause such an accident.

4. ———: ———: **Negligence:** **Fellow-Servant.** In such case, where the evidence showed it was the reckless act of some of the employees in opening the gate which was the proximate cause of the injury, the plaintiff could not recover for the reason that the death was caused by the negligence of the fellow-servants of the deceased.

5. ———: ———: ———: **Proximate Cause.** In such case, even if the gate lacked proper fastenings, and though that act of negligence made possible the negligent act of the employees in opening the gate, the latter was the efficient and proximate cause of the accident.———

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

AFFIRMED.

*Daniel Dillon* for appellant.

The trial court erred in instructing the jury at the close of the evidence for plaintiff, that plaintiff could not recover and that their verdict must be in favor of defendant. Mortgage Co. v. Rees, 21 Col. 435; Siddall v. Jansen, 168 Ill. 43; Fisher v. Cook, 23 Ill. App. 621; Bank v. Morgolofski, 75 Md. 432; Wise v. Ackerman, 76 Md. 388, 389; Frolich v. Cranker, 21 Ohio C. C. 625; Engel v. Smith, 82 Mich. 1; Tousey v. Roberts, 114 N. Y. 312; Camp v. Wood, 76 N. Y. 92; Hopkinson v. Knapp & Spalding Co., 92 Iowa 328; Rosenbaum v. Shaffner, 98 Tenn. 624; Building & Loan Assn. v. Dawson, 97 Tenn. 367, 56 Am. St. 804, and note to case; Irmer v. Brewing Co., 69 Mo. App. 17; Wendler v. Fur. Co., 165 Mo. 527; Goldsmith v. Building Co., 182 Mo.

597; Musick v. Packing Co., 58 Mo. App. 322; Zellars v. Water & Light Co., 92 Mo. App. 107; Reichla v. Gruensfelder, 52 Mo. App. 57; Dayharsh v. Railroad, 103 Mo. 570; Monahan v. Clay & Coal Co., 58 Mo. App. 68; Halliburton v. Railroad, 58 Mo. App. 33; Boland v. Railroad, 36 Mo. 490, 491; Faris v. Railroad, 80 Mo. 325; Schmidt v. Railroad, 149 Mo. 269, 163 Mo. 645; Kube v. Transit Co., 103 Mo. App. 582; Branson's Ad. v. Labrot, 81 Ky. 638; Dowling v. Allen & Co., 74 Mo. 13; Reisert v. Williams, 51 Mo. App. 13; Dwyer r. Railroad, 12 Mo. App. 597; Koons v. Railroad, 65 Mo. 592; Nagel v. Railroad, 75 Mo. 653; Fink v. Furnace Co., 10 Mo. App. 69-74; Kelly v. Parker Washington Co., 107 Mo. App. 490; Rogers v. Printing Co., 103 Mo. App. 683; Knight v. Sadtber, 91 Mo. App. 574; Paden v. Van Blarcom, 181 Mo. 117; Young v. Oil Co., 185 Mo. 635; Brown v. Railroad, 90 Mo. App. 20; Becker v. Schutte, 85 Mo. App. 57; Kennedy v. Ryall, 67 N. Y. 385; Love v. Am. Man. Co., 160 Mo. 608; Shearman & Redfield on Neg. (5 Ed.), sec. 54; Beach on Contributory Neg. (3 Ed.), sec. 21; Baird v. Railroad Co., 146 Mo. 281, 282; Guthridge v. Railway, 105 Mo. 520; Stanley v. Union Depot Co., 114 Mo. 619.

*Klein & Hough* for respondent.

Defendant is not the insurer of the safety of its employees and is under no obligation to exercise more than ordinary care in providing for them a reasonably safe place for the doing of their work, and a reasonably safe way of ingress and egress to and from their work. If appellant's contention is well founded, it would make the respondent an insurer of the safety of its employees at all hazards. O'Brien v. Steel Co., 100 Mo. 189; McDonough v. Lanpher, 55 Minn. 501; Wise v. Ackerman, 76 Md. 375; Moran v. Wagon Co., 26 N. Y. Sup. 852; Smillie v. Dollar Store Co., 47 Mo. App. 402; 10 Am. and Eng. Ency. Law (2 Ed.), p. 952; Purcell v. Shoe

Co., 187 Mo. 276. Although the defendant may have permitted the elevator to be used by its employees in going to and from their work, this did not constitute the elevator in question a passenger elevator, if the elevator was in fact used by the defendant as a freight elevator, and the employees were not required to use the same, and the defendant provided a safe way of ingress and egress for its employees by means of stairways which could or might be used by them. Knox v. Steam Powder Co., 69 Hun 231. The action of the court below in sustaining a demurrer to plaintiff's evidence was proper. The evidence clearly showed that the proximate cause of the death of George Rottman was the act of the boys in front of the gate, his fellow-servants, in raising the gate and the act of the other boys behind (also his fellow-servants) in shoving and pressing forward and pushing him into the shaft. No act or omission on the part of the defendant was the proximate cause of his death. Where plaintiff's evidence shows that the proximate cause of the injury was not the result of any act of negligence on the part of defendant, a demurrer to the evidence should be sustained. Block v. Swift, 161 Ill. 107; McCarty v. Hotel Co., 144 Mo. 397; Poindexter v. Paper Co., 84 Mo. App. 52; Keenan v. Edison, etc., Co., 159 Mass. 379, 382; Headford v. McClary Mfg. Co., 23 On. 335; Pettigrew v. Ore & Steel Co., 14 Mo. App. 441; Kelly v. Lead Co., 128 Mass. 456; 10 Am. & Eng. Enc. Law (2 Ed.), 952. The death of plaintiff's son was caused by his own negligence. The evidence was clear and undisputed that deceased ducked down and stooped under the gate, and stepped into the shaft. Hudson v. Railroad, 101 Mo. 13; Chaney v. Railway, 176 Mo. 598. Where the evidence shows that a child for whose injury a parent is bringing suit, has been guilty of contributory negligence, it is the duty of the court to take the case from the jury. Ballou v. Collamore, 160 Mass. 246, 248; Pain v. Railway, 136 Mo. 552, 585; Guichard

v. New, 9 App. Div. 485; Sullivan v. Lally, 166 Mass. 265; Robinson v. Wright, 94 Mich. 283.

GOODE, J.—In the tragic event which gave rise to this action eight persons, among whom was the son of plaintiff, lost their lives. The event occurred January 13, 1904, at the defendant's shoe factory on the corner of Eleventh and St. Charles streets in the city of St. Louis. Plaintiff's deceased son, on the day he was killed, was between thirteen and fourteen years old. He was a son by plaintiff's first marriage and his name was George Rottman. He had been working in the factory eight days. The factory building is seven stories high and an elevator plies between the basement and the top floor. The elevator was operated by steam or electric power; by which is not disclosed. It was built for the carriage of freight; but in the morning, at noon and at the quitting hour in the evening, the employees on the different floors were permitted to use it in going to and from their work. The elevator ran up and down in a shaft; it was strongly built of oak timbers and was somewhat in the form of a box car. As we understand, the elevator carriage or car had a doorway on one side, but no door attached to the car itself. The gates which closed the shaft and through which ingress and egress to and from the car were obtained, were stationary on the floors of the different stories of the building. This was true, at least, on the sixth floor where the disaster occurred. On that floor there was an open door or gate about six feet high, which gave access to the elevator shaft and was raised when the car was receiving or discharging a load and lowered when it was not. The gateway or opening into the shaft was twelve or fourteen feet high. The gate itself stood, when down, an inch or two from the floor. It was balanced by weights like a window sash; and was over-weighted, according to the estimates of witnesses, twenty-five pounds or more. That is to say, an upward

thrust strong enough to lift twenty-five pounds was required to raise the gate for entrance or exit from the car. The floor of the room extended about a foot inside the gate to the edge of the shaft in which the elevator ran. The oaken gate was covered by an iron grating over which a white cloth was stretched in the winter to keep out draughts. The room in the vicinity of the shaft was well lighted with electricity and so was the interior of the elevator. The interior light was plainly visible through the cloth, according to the testimony of all the witnesses but one. Albert Feuser, a boy who witnessed the accident, said he saw the light in the elevator as it rose to the sixth floor at the time the accident occurred; but could not see it while at that floor or ascending to the next one. A large number of employees, including plaintiff's deceased son, worked on the sixth floor of the factory. At closing time in the evening, the employees in their hurry to get home, would crowd about the elevator gates on the different floors in order to go down on the first trip of the elevator. They had been warned frequently not to do this; but whether during the time plaintiff's son worked in the factory, was uncertain. To prevent them from pushing against the gate, an iron gaspipe had been placed in sockets about a foot in front of the gate and four feet above the floor, and inclined toward the gate at an angle which permitted a person to enter the space between it and the gate only at one end. This expedient seems to have been rather ineffective, because the employees would take the bar away, climb over and stoop under it. No accident had happened in the factory in connection with the use of the elevator by the employees until the occasion in question; though the elevator, constructed in the manner it was at the time, had been operated for more than five years. About 5:30 in the evening of the tragedy, from twenty to twenty-five of the employees of the factory were gathered about the gate on the sixth floor waiting to descend. When the car came

up to that floor, the man in charge of it either was unable to lift the gate on account of the pressure of the crowd against it, or refused to lift it while the crowd was pressing. The testimony assigns both those reasons in explanation of his not raising it. He told the employees that when they got through pushing he would let them on the elevator; and after saying this, ascended to the seventh floor. While the elevator was at the seventh floor, three boys who were standing against the gate, raised it from three to four feet above the floor, went under, were immediately pushed into the shaft by the pressure of the crowd behind them and fell to the bottom. Other employees standing near stooped or, to use the word of the witnesses, "ducked," under the gate and were likewise shoved into the shaft. This continued until nine persons had fallen, of whom eight were killed. The awful occurrence occupied only a few seconds, as almost immediately one workman standing near realized what was happening and shoved the employees back, thus preventing other deaths. Much of the testimony tends to show that some of those who entered the elevator shaft had to stoop under the iron bar in front of the gate, as well as under the gate itself; but there was some conflict about this matter; a witness or two stating that the bar was not in place at the time. George Rottman, plaintiff's son, did not assist in lifting the gate, but was among the boys who went under it and fell into the shaft. He was in the second row of waiting employees. There were good stairways in the building running from the ground to the various floors, which the employees were privileged to use and which many did use. No one was compelled to go up and down in the elevator, but any one might do so if he desired. There was a slight discrepancy in the evidence as to what Johnson, the man in charge of the elevator, said to the crowd about the gate on the sixth floor when he refused to take them aboard. Some witnesses swore he exclaimed to the crowd to get away from the

gate, that he was going up to the next floor.    Other witnesses said he told the boys to get away from the gate so he could raise it, and others that until they got away from the gate he could not take them down.    The witnesses agreed that he said something to indicate that he would admit no one into the elevator until the pressure of the crowd on the gate had ceased.    They agree also that all the employees who fell into the shaft stooped down in order to go under the gate.    There was some testimony tending to prove that the last boys who fell, went under the gate in the belief that the elevator was waiting at the floor.

An ordinance of the city of St. Louis was introduced which required all power elevators to be in charge of persons not less than fifteen years old and of industrious and sober habits.    This ordinance provided that whenever the owner of an elevator was notified by the city inspector of boilers and elevators that a person operating an elevator was incompetent to run it, or untrustworthy, the owner should at once replace the incompetent operator.

The foregoing was the substance of the testimony on which the court below directed the jury to return a verdict in favor of the defendant.

The petition accuses the defendant of negligence in the following particulars; first, operating the elevator while in an unsafe and dangerous condition to be used by passengers, and not providing a safe and suitable door; second, providing a gate at the sixth floor which was not such a one as was used on elevators carrying passengers and was unsuitable, dangerous and unsafe for that purpose because it could be opened from the outside; whereas, passenger elevators are commonly constructed so that their gates or doors cannot be opened except from the inside of the shaft; third, in having the gate so constructed that it could be raised when the elevator car was not even with the floor of the

room where the gate was; fourth, in having the elevator door covered with cloth, so that passengers on the outside could not see whether a car was opposite the opening in the shaft or not, and in not having the entrance to the elevator guarded where the boys fell into the shaft or properly lighted, but leaving it dark and more dangerous and unsafe that it should have been; fifth, in permitting an incompetent and unskillful boy to operate it and one who was not licensed by the inspector of boilers and elevators of the city of St. Louis as required by ordinance; sixth, in not warning plaintiff's son, who was under fourteen years of age, of the dangers and risks he was subject to in using the elevator or instructing him regarding its use.

There was no testimony that the elevator operator lacked skill or caution; but on the contrary the evidence went to show he was perfectly competent. He had been in charge of the machine a long time and had operated it well. Neither was there any testimony to show his retention in service was against the city ordinance or the will of the city inspector. No evidence was introduced to support the averment that defendant had negligently omitted to give plaintiff's son instructions regarding the use of the elevator or the dangers incident to its use. Nor was there proof that the shaft was improperly guarded, unless the gate we have described was defectively fastened, a point that will be discussed. When lowered the gate was high enough to prevent a person from falling into the shaft. It was stanch enough to withstand weight and pressure and completely blocked the entrance. The charges of negligence which plaintiff's counsel contends the evidence had some tendency to support, were the lack of sufficient illumination about the elevator shaft and in the car, and failure to have the gate fastened so it could not be opened from the outside. In our opinion there was no substantial evidence to prove the illumination was deficient. All the witnesses say there was plenty of light

about the room in the vicinity of the shaft, and all but one, that the light inside the car was plainly visible through the white cloth which covered the gate. We have quoted the testimony of Albert Feuser, which is said to show the light in the car was invisible through the cloth over the gate, and that, hence, passengers awaiting the car on the sixth floor were unable to tell when the car was standing at the floor. What the truth about this matter is we do not conceive to be a vital point in the case; but the truth is clear. Feuser's statement was that he saw the light in the elevator as it ascended toward the gate, but could not see the light after it stopped there, or as it went up to the seventh floor. It is well nigh incredible that an electric light would not show through a thin white cloth and absolutely incredible that if the light was visible as the car approached the sixth floor, it was invisible as it mounted to the seventh floor. The gate with the cloth over it extended only half way to the top of the gateway or entrance. Hence, when the car got above the top of the gate, there was no object to intercept the view of the light as the car mounted through the shaft along the remaining six or eight feet of the aperture on the sixth floor.

That the deceased exercised due care for his own safety will not entitle plaintiff to damages for his death unless the negligence of the defendant was the proximate cause of his death. Therefore, we will examine the evidence with a view to ascertain if it conduces to show the defendant was guilty of any negligence. If it does, the next inquiry will be whether such negligence was the proximate cause of the accident in which plaintiff's son lost his life. In weighing the evidence on the issue of defendant's negligence, we must fix in our minds the degree of care incumbent on the defendant in the construction of the elevator gate; for unless there was some negligence in that respect, there is no case. Indeed, the only negligence charged in regard to the gate is that it ought to have been fastened by some ap-

pliance to prevent it from being opened by a person on the outside. A material point in this connection is whether the defendant and the deceased occupied the relation of carrier and passenger, so that defendant was under the duty to exercise the very high care for the safety of the deceased exacted by the law whenever that relationship exists; be the mode of carriage an elevator, a train of cars, or some other vehicle. The elevator was not operated to carry passengers generally so that defendant became a common carrier. It was constructed and mainly used to transport freight and was, of course, especially adapted to that use; not to the conveyance of passengers. Three times a day the employees were permitted to ride on it in going to and from their work; and it is insisted that at those times the defendant was under the degree of responsibility attached to common carriers of persons. The proposition of whether an employee of such a carrier becomes a passenger, and entitled to the observance of high care to insure his safety while being transported by his employer to and from his work, is one regarding which the authorities conflict. The point usually arises in the endeavor to ascertain if an injured employee was a fellow-servant of employees whose negligence caused the injury. If he is held not to have been a passenger, but a servant, he has no redress; because in that contingency, the accident was due to the fault of a co-servant; whereas if he was a passenger, he was for the time being exempt from the force of the fellow-servant rule. The cases on the subject were examined in Hass v. St. Louis & Suburban R. R., 111 Mo. App. 706, wherein this court held that a railroad trackman, who was injured on one of the defendant's cars while traveling to his place of labor, was a passenger on the car he was using and not a co-servant of the negligent crew of another car. In dealing with this point in the present case, it is to be remembered that the defendant was not engaged in the carrying business, as were the defendants in the

cases wherein servants were held to be passengers temporarily. It had no passenger elevator in its factory, nor does it appear that business was transacted with the public at the factory for which one would have been required. Defendant accommodated its employees by permitting them to use the freight elevator, though ample stairways were provided, which they might use. As to the stairs, the defendant's duty was to use care to keep them reasonably safe. It would be an arbitrary ruling were we to hold that in permitting the employees at certain hours to use the elevator without charge, instead of the stairs, the defendant lost for the time the character of employer, and became a common carrier of passengers and bound to exercise the highest care for the safety of its employees; a character which it neither had nor held itself out as having, at any other time. Our decision is that in the use of the elevator in going to and from their work in the building, as when performing their tasks, the employees were servants. Hence the measure of the defendant's duty in the construction and operation of the elevator, was ordinary care. This appears to have been the decision in O'Brien v. Western Steel Co., 100 Mo. 182, wherein the facts were much like those of the case at bar; though the opinion lays some stress on the circumstance that Mrs. O'Brien's son was killed while using the elevator on an errand of his own. It was a freight elevator in a factory, but was used by the employees in going from one floor to the other.

McDonough v. Lampher, 5 Minn. 501, is exactly like the present case as to the immediate point. McDonough sustained a personal injury from a freight elevator in a factory. On arriving in the morning and leaving in the evening the employees in the building were permitted to ride on the elevator, but were not required to do so, as there were stairs in the factory. The trial court instructed the jury on the theory that in the construction and operation of the elevator the defendant was bound to exercise the care incumbent on carriers

of passengers. This was held to be an erroneous charge on the ground that the plaintiff became an employee when he entered the building to go to work and the defendant was only bound to observe ordinary care for his safety.

In Wise v. Ackerman, 76 Md. 375, the same conclusion was reached on similar facts. The decision was that an elevator erected in a factory or warehouse and intended to carry goods and materials from one part of the building to the other, but which the employees of the establishment were accustomed to use for their own convenience, must be operated with ordinary care, considering the dangerous nature of the machine, in order to exempt the employer from liability for injury to an employee by the machine.

It should be kept in mind too that the law did not require the defendant to exercise minute care to supply its freight elevator with the various devices to insure safety that are requisite to a regular passenger elevator. More danger is necessarily incurred and, therefore, is to be apprehended, in riding on a well-made and managed freight elevator than on a passenger elevator; and this risk is assumed by one who rides on it. Such is the rule in regard to the risk of using freight trains for travel; and we see no reason why it ought not apply in the case of a freight elevator.

In McGee v. R. R., 92 Mo. 208, 217, the Supreme Court approved the doctrine stated in Thompson on Carriers of Passengers, that a railroad company is held to as strict accountability for the negligence of its employees in the management of a freight train with a caboose attached in which passengers are seated, as the law imposes on carriers of persons on passenger trains; but that a railroad company cannot be expected to provide its freight trains with all the conveniences and safeguards against danger which may be demanded properly in trains designed solely for passengers. Applying that doctrine to the case in hand, we cannot hold, as plain-

tiff's counsel insists we should, that the laws required the defendant either to provide its freight elevator with fastenings as secure as would be essential on a passenger elevator, or to keep pace with new inventions and appliances; which, it seems, the proprietor of a passenger elevator must do. [Treadwell v. Whittaker, 80 Cal. 575; 56 Am. St. Rep. 807.] We hold that the duty incumbent on the defendant was to have its elevator and the entrances thereto, reasonably secure for the use of its employees who were permitted to ride. Does the evidence conclusively show defendant observed that degree of care? is the important inquiry. The elevator gate was of massive and substantial construction. It could be raised from the outside, but rested firmly on the floor until lifted. If it had gotten out of place from some defect in its construction and thereby had misled the deceased, and the other persons who entered the shaft, into believing the elevator was at the gate, the facts would themselves speak strongly on the issue of defendant's neglect. But the elevator, constructed as it was and with the gate as it was, had been used for more than five years—how much more we do not know— and no one had been hurt. Many employees worked on the six floors of the building above the ground floor, and many of them had used the elevator several times a day during that period. It is moderate to say that a hundred employees used the elevator three times a day for five years without injury. The gates had always proved adequate to exclude persons from the shaft when the elevator was not there. What better reason to believe the gates were safe could defendant have had? We accept the doctrine contended for by plaintiff's counsel that the degree of care exacted of persons depends on the risk to be apprehended. The corollary of this proposition is that when a party has no reason to anticipate a particular danger, the law does not require him to take measures against it; and an exception to this rule is not made because, in point of fact, an accident happened.

As has been said many times, human sagacity cannot anticipate every accident, and casualties often occur which were easily preventable could they have been foreseen; but which no one could foresee. Our judgment is that the gate in question was well adapted to prevent entrance into the elevator shaft when the car was not at the gate, and that the defendant had no reason to apprehend such a rash act as the raising of the gate when the car was absent. The very best reason for this rule is that, notwithstanding the long use of the gate, no such event had happened before. The facts are very different from those in Buesching v. Gas Light Co., 73 Mo. 219, in which the deceased fell into an unguarded excavation by the edge of the sidewalk; for though many thousand persons had passed that spot without falling into the excavation, the most casual observer would think such an accident possible. It is also unlike the case of Kube v. Transit Co., 103 Mo. App. 582, to which we are cited by counsel, and similar cases wherein it was ruled that motormen in charge of street cars were bound to anticipate the likelihood of schoolchildren being on the car tracks in front of a public schoolhouse at the hour school closed. It is unlike the case of Rodgers v. Printing Co., 103 Mo. App. 683, wherein it was held that the defendant might have anticipated the accident complained of because of the previous occurrence of a similar accident. The present case rather resembles Dugan v. Champlain Co., 56 N. Y. 1, wherein a person was drowned by slipping under the guard rail on the deck of the defendant's boat, and the defendant was exonerated from liability because boats of the same construction had been used for many years without an accident and, therefore, the company's officers had no cause to anticipate the accident. It likewise resembles Loftis v. Ferry Co., 84 N. Y. 455, wherein a child in passing from a ferry boat to land, fell through an open span beneath the guardrail of the boat and was drowned. No accident of the kind had happened before, though

numberless persons had passed from the boat to land in the same way.

Machinery so secure that venturesome youths cannot be hurt by it has not been and cannot be devised. It is easy to see now that if the gate in question had been fastened on the inside so it could not have been opened from without, the persons who were killed would never have entered the shaft by raising the gate and passing under it. But a prudent mind would be unlikely, except by a happy conjecture or flash of divination, to expect such temerity; especially when assured of the security of the gate, by the use of it through years unmarred by an accident. Plaintiff's counsel says it was shown by warnings the superintendent had given against raising the gate, that he anticipated that some employee might raise it and fall down the shaft. We have read the evidence repeatedly and find no support for this argument. The employees had been warned not to crowd about the gate; but there is no testimony regarding warnings to employees not to raise the gate from the outside when the car was away from the floor, and thereby open a trap into the shaft. All the evidence on this point, and there is but little, goes to prove that it was thought the habit of crowding around the gate entailed the risk of injury to employees in entering the car when it was present; not of falling into the shaft when it was absent. And the apprehension actually felt by the superintendent was one that would arise naturally, according to the association of ideas, from observing the constant behavior of the employees; whereas apprehension of them lifting the gate when the car was away, an imprudence never committed before the occasion in controversy, would not arise naturally. We hold that there was no evidence fairly warranting the inference of negligence on the part of the defendant in failing to provide an automatic or interior gate fastening.

Since writing the foregoing we have read the authoritative and well-considered opinion of MARSHALL,

J., in Purcell v. Tennent Shoe Co., 187 Mo. 276, which sets at rest the question of defendant's negligence in failing to provide fastenings to prevent the elevator gate from being raised from the outside. That was an action for personal injuries received from falling into the open shaft of a freight elevator. The plaintiff was an employee of the defendant shoe company and fell into the open gateway while sweeping about it. The gate, like the one in the case at bar, was balanced by weights. Unknown to the defendant it had been raised and left up by some one. The contention was that it should have have been so constructed as to work automatically, and that the shoe company was guilty of negligence in using it without an automatic appliance. After remarking that the employee knew all about the construction of the gate and the manner of running the elevator, the court said further, that though automatic gates would have been safer, one that was raised and lowered on weights was usual on freight elevators and not unsafe. The action of the trial court in sustaining a demurrer to the evidence was affirmed. This decision of the Supreme Court appears to preclude a recovery by the present plaintiff; whose only plausible ground for a verdict is that the defendant was careless in letting the elevator shaft be accessible from the outside.

If one will visualize to his mental eye the tragedy in which the deceased perished, the proximate cause will at once appear. A group of twenty or more boys and young men had crowded around the gate, anxious to get aboard the elevator on the first trip in order the sooner to reach home. The elevator came to the floor where they were and the operator did not raise the gate; either because their pressure on it prevented, or because he thought it imprudent to raise it while the pressure continued. He so stated and ascended to the floor above. Three boys who were next to the gate lifted it a few feet from the floor, but not high enough to walk under without stooping. They and the others stooped and passed

under the gate into the shaft. Is it not palpable that the proximate cause of the accident was the rash act of the boys who raised the gate, even granting that the deceased was not negligent in entering the shaft? Raising the gate was an act of extreme carelessness; for the boys who did it were familiar with the operation of the elevator and could see it had ascended to the seventh floor.

In their customary employment the boys were fellow-servants of the deceased and defendant would not be liable for his death caused by their negligence. [McCarty v. Rood Hotel Co., 44 Mo. 397.] But plaintiff's counsel insist they were not fellow-servants at the time of the accident, because not then attending to the master's duty. We have ruled that defendant's employees were servants while going to and from work on the floors as well as when at work.

Plaintiff's counsel insists that, even though the negligence of the boys who raised the gate may have been one cause of the casualty, a concurring cause was the negligent construction of the gate and, therefore, defendant is liable. We have already held the gate was well constructed. But if the proof showed the contrary, we would not accept the proposition maintained by plaintiff's counsel to be the law. Even if the gate was carelessly fastened, the raising of it by the three boys when the car was above, was an independent act of negligence not induced or set in motion by the defective construction of the gate, but merely rendered possible by it. In other words, if the gate was faulty in not having interior fastenings, that fact was a condition which enabled the boys on the outside to raise it, but did not cause them to raise it; nor was their doing so a thing to be expected. Their motive was to get on the elevator quickly. The case has no resemblance to those in which defendants were held liable for exposing dangerous machinery where it was apt to attract very young children who had no conception of the risk of tampering

with the machines. The boys who raised the gate knew what they were about and its risk. If the gate lacked a proper fastening, this fact was not concatenated, as cause and effect, with the rash act of raising it from without; and the law is that when an act of negligence simply made possible another act of negligence which was efficient in causing damage, the latter is to be treated as the sole proximate cause. (Butz v. Cavanaugh, 137 Mo. 503; Saxton v. Railroad,98 Mo. App. 494; 1 Shear. & Red., Neg. (5 Ed.) secs. 31 et seq.]

No plea of contributory negligence was interposed in the answer, but nevertheless, if the evidence introduced by the plaintiff, showed beyond controversy that the deceased was guilty of negligence contributing to his death, it was right to direct a verdict for defendant on that ground. [Milburn v. Ry., 86 Mo. 104; Chaney v. Railroad, 176 Mo. 598.] Nor does the boy's age necessarily preclude the ruling. For aught that appears he was of average intelligence, and he had used the elevator long enough to know how it was operated. His stooping under the gate and entering the shaft without ascertaining, as he could have done easily, whether the elevator was there or not, strongly suggests negligence and respectable precedents exist for holding that notwithstanding his youth, such conduct prevents recovery —precedents whose facts were very like those in the case at bar; for the litigation grew out of injuries to boys who had stepped or leaned into open elevator wells. [Poindexter v. Paper Co., 84 Mo. App. 352; Mau v. Morse, 3 Colo. App. 359; Taylor v. Mfg. Co., 143 Mass. 470; Patterson v. Hemingway, 148 Mass. 94; Knox v. Car Co., 69 Hun 231; Diebold v. Baking Co., 72 Hun 403; Guichard v. New, 9 App. Div. (N. Y.) 485; Headford v. Mfg. Co., 23 Ont. 335.] In view of our previous ruling we find it unnecessary to pass on the question of the contributory negligence of the deceased.

Many decisions are cited in the briefs as pertinent to the case at bar. We have carefully examined them

all and others besides; moved thereto not by a belief that the present case is difficult of decision, but by our sense of responsibility in view of the appalling loss of life with which it is connected. In several of the decisions called to our attention in which the evidence was held to present a case for the jury, the elevators mentioned were intended to carry passengers, and some defect of construction was shown, or else that the operator was negligent; usually in opening the door when the elevator was away or while it was in motion. [Colorado Mort. Co. v. Rees, 21 Colo. 435; Siddall v. Jansen, 168 Ill. 43; Fisher v. Cook, 23 Ill. App. 621; Hopkinson v. Knapp Spalding Co., 92 Iowa 328; Frolich v. Kranker, 21 Ohio Ct. Rep. 615; Southern Loan Assn. v. Dawson, 97 Tenn. 367; Rosenbaum v. Shaffner, 98 Tenn. 624; Strawbridge v. Bradford, 128 Pa. St. 200; Amillie v. Dollar Store, 47 Mo. App. 402; Wendler v. House Furnishing Co., 156 Mo. 527; Goldsmith v. Holland Bldg., 182 Mo. 597.] In some instances ordinances had been violated which required the elevator shaft to be guarded. [Wendler v. House Furnishing Co., supra; Siddall v. Jansen, 168 Ill. supra.] There was no proof in the present case that a city ordinance had been violated. In certain authorities cited, the injured party had fallen through a trap door which an employee of the defendant had carelessly left open. [Irmer v. Brew. Assn. 69 Mo. App. 17; Engle v. Smith, 82 Mich. 1.] Similar carelessness was shown in Campbell v. Woods, 76 N. Y. 92, wherein the plaintiff walked through an open door on a piazza, which he supposed to be the sidewalk, fell off and was hurt.

The case of O'Brien v. Steel Co., 100 Mo. supra, is much like the present one, and therein it was held that no recovery could be had for the death of a boy, because he was familiar with the construction and operation of the freight elevator and accepted whatever risk was incident to riding on it, provided it was managed with ordinary care. The boy was killed by leaning for-

ward and projecting his head beyond the archway of the opening into the elevator shaft. The elevator was reversed suddenly and caught his head between its floor and an arch above. The negligence charged was that the elevator was constructed in an improper manner.

The judgment is affirmed. All concur.