William H. Cox, Respondent, v. James D. Bondurant, Sr., William P. Bondurant and James D. Bondurant, Jr., Co-Partners Doing Business Under and By the Name of Palace Bakery, Appellants.

Kansas City Court of Appeals. May 4, 1925.

1.—Negligence—Elevator Shaft—Plaintiff Sustaining Injuries by Falling into Elevator Shaft, Held Guilty of Contributory Negligence as a Matter of Law. In an action for damages for personal injuries sustained by plaintiff when he fell into an elevator shaft where the doors guarding the entrance were closed, and while in a hurry he opened them and stepped in, knowing that an elevator shaft was there, in which elevator operated there being light enough for him to see open shaft if he had looked, but without taking even a glace to see whether elevator was at entrance when doors thereto were opened, stepped in, held guilty of contributory negligence as a matter of law precluding recovery.

2.—Same—Same—Landlord Liable Where Invitee Lawfully on Premises Falls into Unguarded Elevator Shaft. Owner of building liable to invitee who steps or falls into unguarded elevator shaft.

3.—Same—Same—Liability of Owner of Building to One Injured by Fall into Elevator Shaft Stated. To create liability against owner of building for injuries to one knowingly stepping into elevator shaft, the opening must have been insufficiently guarded, not properly lighted, concealed, or difficult to see that the elevator was not at entrance.

4.—Appeal and Error—Demurrer—Where Defendants Did Not Demur to Plaintiff's Evidence, but Demurred at Close of Whole Case, Ruling on Such Demurrer Was Not Thereby Waived. Where defendants did not demur at close of plaintiff's case, but demurred at close of all the evidence, they did not waive right to have demurrer at close of whole case reviewed on appeal.

---

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 841, n. 49. Carriers, 10CJ, p. 871, n. 66. Negligence, 29Cyc, p. 470, n. 88; p. 471, n. 8; p. 518, n. 22; p. 519, n. 23, 24. Trial, 38Cyc, p. 1545, n. 78; p. 1549, n. 45.

Appeal from the Circuit Court of Adair County.—Hon. James A. Cooley, Judge.

Reversed.

*O. E. Murrell* and *Campbell & Ellison* for respondent.

*Higbee & Mills* for appellants.

TRIMBLE, P. J.—Plaintiff received some bruises and an injury to his left ankle when he fell into an elevator shaft on defendant's premises. He brought this suit for damages and recovered a verdict and judgment for $3500. Defendants have appealed.

In Kirksville, Missouri, defendants own a two-story brick business building with basement, in which they conduct a general bakery and creamery business. The west side or wall of said building abuts upon an alley, and against said west wall is a platform about two feet wide, eighteen feet long and nearly four feet high. The platform is on a level with the first floor of the building. Entrance from the platform into the building is had through a doorway in said west wall. Just inside the building and in this doorway is the elevator shaft, so that when the elevator is at the first floor, one can step through the doorway immediately from the platform onto the floor of the elevator. The latter was operated by electricity and could be moved from the basement to the first and second floors. When it reached either the basement or the top floor, it would stop automatically, but, in order to have it stop at the first floor, whoever was operating it had to pull a small control rope and put it into a slot or horseshoe-shaped device. The north and south sides of the elevator shaft were boarded up solid to the top of the building. The east side of the elevator shaft was protected by a gate which automatically closed when the elevator was lowered or raised from the first floor. The west side of the shaft was, of course, the doorway in the west wall of the building; and in the summer time this doorway was protected by two wire screen doors, the doorway being five or six feet wide and seven feet high. These doors were kept closed by means of stout springs, so that in entering from the outside platform to the elevator one must open one or both of said doors and hold them open until he steps inside, whereupon the screen doors would immediately close on account of their springs. Thus access to the interior of the building from the platform was had through the doorway and across the elevator when at the first floor, or, if it were at the basement, the top of the elevator, which was covered with a heavy wire netting or mesh, afforded a means of going over it and through the gate on the east side to the interior of the building. However, when the elevator was thus at the basement, this top of the elevator was two inches or more above the level of the platform and first floor of the building.

Defendants bought milk from various farmers, including plaintiff, which was delivered in the ordinary commercial milk cans, hauled by the farmers to this outside platform and taken by them through the doorway in the west wall to the place where the milk was received.

For sometime, perhaps a year, plaintiff had delivered milk by unloading his cans onto the outside platform, and, after placing the cans and himself on the elevator, he would start the elevator downward, by giving the proper pull to the rope, and when the basement floor was reached the elevator would stop automatically, and the cans would then be taken off the elevator to the point in the basement where defendants received them. Plaintiff would then return to the first floor by getting upon the elevator and giving the rope the proper pull which would start the elevator upward and he would stop it at the first floor by pulling the control rope into the slot for that purpose. He made these deliveries and went over this route in this way daily.

In the spring of 1922, defendant began receiving the milk somewhere in the interior of the building on the first floor, and access to the building from the platform was had through the above-mentioned doorway and across the elevator floor if it was at the first floor, or across the wire netting on its top if the elevator were in the basement. Plaintiff continued to deliver milk on the first floor in this way from the spring of 1922 until his injury which happened on August 31, 1922, at 8:30 in the morning.

Plaintiff drove his team of horses to the platform and unloaded his two cans of milk thereon. He then started to take them through the doorway into the building. He admits he was hurrying because he was somewhat late and a man had driven up behind his wagon and was waiting for him to get out of the way. Plaintiff says he picked up one can with his right hand and started into the doorway by opening one of the screen doors with his left, pushing the door around and holding it open, while he turned around and with his right started to swing the can into the elevator and stepped in, but the elevator was not there and he fell to the basement below, a distance of about twelve feet. He says as he turned to pick up the can with his right hand while holding the screen door open with his left, this placed him with his back to the elevator and his face toward the alley, and that in this position he stepped inside, not backwards, but "sideways," his right side going in first. He says he didn't know which way he was looking, whether to the north or west into the alley, nor whether he turned his head with his body; that he *didn't stop to see where the elevator was,* but simply grasped his milk can and *walked in there without looking.* He was asked—

"Q. You didn't stop to see where the elevator was? A. No, I never stopped to see where it was.

"Q. You simply grasped your milk can and simply walked in there? A. Yes, sir.

"Q. And without looking? A. Yes, sir."

He gave the size of the doorway and screen doors as above stated, and said that when he opened the screen doors there was nothing

between the elevator and outdoors, and that he had to open the screen doors and hold them open in order to get inside.

He was further asked:

"Q. Didn't you stop to look when you delivered milk there and started to walk in there? A. Not every time I didn't.

"Q. I mean this particular time? A. No, I didn't.

"Q. You didn't stop to look? A. No, I didn't."

He denied that, as he entered, his team was "fixing to start off" and said his attention was not attracted to his horses, but admitted that he was "hurrying up to take my milk in" as he was "mighty near late that morning."

The petition alleged the maintenance of the doorway and the elevator shaft and elevator as above described and charged that it had long been the custom and practice of defendants to keep said elevator either at the bottom of the shaft so that persons entering the doorway could walk over the top of the elevator, or to keep said elevator at the first floor so that such persons could walk through and across said elevator, and plaintiff and other sellers of milk had for a long time, at defendants' invitation, delivered their milk through said doorway and through or over said elevator in this way; that at all the times when plaintiff delivered milk to defendants through said doorway prior to his injury, said elevator was kept so that he could either walk over and across it or through it, and plaintiff, relying on that practice and custom, believed said elevator was so kept and maintained and in said position at the time he was hurt.

The negligence charged was a failure to keep said building well lighted in and about said elevator shaft whereby persons entering said doorway could not well see said shaft or the location of said elevator; also that defendants, prior to the time of plaintiff's entrance, negligently removed the elevator from its usual and customary location, leaving the elevator shaft open from the doorway to the bottom, and negligently *failed to prevent* plaintiff and persons so entering said doorway from falling down through said elevator shaft, and negligently *failed to warn* plaintiff that the elevator had been removed from its customary location so that he could not walk over, across, or through said elevator when delivering milk as aforesaid.

The answer contained a general denial and further averred that if plaintiff received any injuries, "the same were caused solely and exclusively by his own negligence in carelessly and negligently stepping into said elevator shaft without first ascertaining or looking to see if said elevator was in place and without first ascertaining whether or not he could cross said elevator or elevator shaft in safety; and defendants aver that the plaintiff knew or by the exercise of ordinary and reasonable care and caution on his part, could and should have known that said elevator at the time and

place mentioned in plaintiff's petition, was not even with the bottom of first floor of said building but was at the second floor of said building and that said elevator shaft therefore could not be crossed by him.

At the close of the entire case, defendants offered a demurrer to the evidence, but this was overruled. Appellants contend this was reversible error.

Respondent contends that contributory negligence was not pleaded, and, therefore, was not in the case. If contributory negligence, as a matter of law, appears in plaintiff's own evidence, then it would seem that this element would be in the case as a part of the law to be applied by the court, regardless of whether it was formally pleaded or not. But we think that contributory negligence was charged. The answer does not merely content itself with saying generally that plaintiff's negligence caused the injury, but specifies what that negligence consisted of, namely, in stepping into the elevator shaft without looking to see whether the elevator was in place, when by ordinary care he could have seen or known it was not there.

There was nowhere in the record evidence of any assurance, or agreement, or promise, on the part of defendants that the elevator would be kept in position so that person entering the doorway could pass through or over it, nor that, if it were moved, a warning would be given. Nor is there evidence of a custom that said elevator was kept in said position for use in that way. Plaintiff does not testify to any such custom. All that he testified to in this regard was that when he delivered milk, the elevator was usually even with the first floor or else down at the bottom, in which case the top of the elevator would be two inches higher than the level of the platform and first floor of the building; that he never saw the elevator up at the top floor and he "never gave it a thought" whether the elevator did or did not run to the top floor, though he admitted that in coming up out of the basement on the elevator he knew he had to pull the control rope and put it into the slot in order to stop it at the first floor and he had done that a good many times, and said that he had done this daily for several months during the time the milk was being received in the basement. His own witness, Wilson, the only other witness plaintiff has as to the delivery of milk, said that a few times when he came with milk he found the elevator at the top floor, that he could see it up there and could see whether the elevator was above or whether it was even with the floor; and that when it was at the top floor there was nothing else to do but wait until it was lowered to the main floor. There was likewise evidence in defendants' behalf on the part of a farmer who sold milk there that sometimes the elevator was in the basement, sometimes at the top floor, about once a week it was up at the top floor. It was not always

in position so it could be crossed and when it was not it had to be called for and some one would bring it down. There was no proof of a custom to *keep* the elevator at the first floor during the hours when milk was being delivered, nor of any agreement or assurance that it would be kept there during those hours. Plaintiff's case was not submitted on any such custom to *keep the elevator in place,* for his instructions do not submit the issue of any such custom, but they merely told the jury that if it was the practice and custom of defendants to receive milk in the way we have heretofore described and the plaintiff and other persons with the knowledge and consent of defendants, were in the habit of crossing over the top or through the elevator to make deliveries, and if to remove said elevator to the top of the shaft and permit it to remain there at or during the time when deliveries were made, rendered the elevator shaft at said door dangerous and unsafe, then it was negligence to remove said elevator to the top of the shaft between said hours of seven and nine in the morning; and that if at a time of day when plaintiff and other persons were in the habit of making deliveries, defendants carelessly and negligently caused or suffered the elevator to be moved to the top of the shaft and such removal caused the elevator shaft at said doorway to be dangerous and unsafe, and defendants failed to warn plaintiff that said elevator had been moved, and plaintiff, while attempting to deliver milk, passed through the screen door intending to go upon and across said elevator and fell into the basement and was injured, then the verdict should be for the plaintiff.

Assuming, but not deciding that it was negligent, under the circumstances, to move the elevator to the top floor at any time between the hours of seven and nine in the morning, the question remains whether plaintiff was not guilty of contributory negligence, as a matter of law, in thus opening the doors to the elevator shaft and entering without taking the least precaution to see whether the elevator was in place. He knew that an elevator shaft was just inside the doors; and since he knew this, the screen doors were guards or doors to the shaft the same as at any other elevator shaft. The mere fact that he had never *seen* the elevator at the top floor would not warrant him in assuming it would always be in place. He knew it was an *elevator* and he manifestly knew it could go above the first floor because he says he knew it had to be stopped when it reached the first floor in coming out of the basement. Our attention has not been called to a case where recovery was allowed one, even an invitee, who approached an elevator's shaft *knowing it to be such,* and which was *closed* by means of guards or doors, and where he *opened* those doors and stepped into the shaft without taking even the slightest precaution to ascertain if the elevator were there. This was a *guarded* elevator shaft. It is for *unguarded*

elevator shafts that the law makes the owner of a building liable for injuries to one who steps or falls therein. [29 Cyc. 469.] The weight of authority is that the owner of a building and elevator is bound to use only ordinary and reasonable care and diligence to keep it safe, and is liable for injury to any person lawfully using it, "who is himself guilty of no contributory negligence" occasioned by the want of ordinary care. [29 Cyc. 470.] To create a liability on the part of the owner of the building for injuries to one knowingly stepping into an elevator shaft the opening must have been insufficiently guarded, not properly lighted, or concealed, or it was otherwise difficult to see that the elevator was not there. "Every person, whether a trespasser, licensee or one present by invitation, when using . . . or when in proximity to an elevator or its shaft, is bound to exercise reasonable care for his safety." [9 R. C. L. 1257.] This authority further says that while an elevator is not, like a railroad track, a place of great danger to be approached with great caution, and when the door to an elevator shaft is *open* and one, in stepping into it, fails to see that the elevator is not there, the question of his contributory negligence must depend upon the circumstances of the particular case; yet that one cannot walk blindly through an elevator door, though if even a hasty and cursory examination would lead an ordinarily prudent person to suppose the elevator is there, he is not necessarily negligent if he proceeds on that assumption. If the opening of the shaft is usually guarded, the *absence* of a guard may justify a person in thinking he is at the entrance to a place other than an elevator; if, however, "the elevator door is only partly open, there is no assurance that the place is a safe one to enter, and a person who opens it entirely and passes through when the carriage is not at the floor is generally considered guilty of contributory negligence as a matter of law." [9 R. C. L. 1258-9.]

In the case at bar, the doors guarding the entrance to the elevator were closed and plaintiff, in a hurry, opened them and stepped in, knowing that an elevator shaft was there, but without taking *even a glance* to see whether it was there or not. He was guilty of contributory negligence. [Wheeler v. Hotel Stevens Co., 71 Wash. 142; Bremer v. Pleiss, 121 Wis. 61; Patterson v. Hemenway, 148 Mass. 95; Kappes v. Brown Shoe Co., 116 Mo. App. 154.]

In Main v. Lehman, 243 S. W. 91, an invitee was not allowed to recover for falling over a step which she had passed over a short time before and knew to be there, although the place was dimly lighted, such invitee having the ability to make light available.

There can be no claim that the case at bar is in any way bottomed upon an insufficiency of light. Plaintiff does not say that he failed to see that the elevator was not there because of a lack of light. He simply *failed to look.* He says the screen doors were five or six feet

wide and seven feet high and that when he opened them there was nothing "between the elevator and out-of-doors." The injury happened on August 31 at 8:30 in the morning when it was broad daylight. That he could have easily seen if he had looked, is shown by the fact that when asked if he could readily see through the wire netting on the top of the elevator (when it was in the basement), he replied, "You could if you would stop and look." Plaintiff's own witness, Wilson, testified that when entering he could see what was in front of him and could see where the elevator was, and that when he came there to deliver milk, he looked to see where the elevator was. It is true, he said it was not as light on the inside of the elevator shaft as it was "outdoors in the sunshine." But this does not state that the shaft was not lighted enough to reveal the presence or absence of the elevator, and the physical facts as well as the testimony shows that it was a failure to look and not a lack of light that caused plaintiff's injury. And the case was not submitted on any theory of a lack of sufficient light, but upon the theory that as defendants knew the men were in the habit of delivering milk through or over the elevators, it was negligence to move the latter, and that too without regard to whether the entrance to the elevator shaft was guarded and closed by wire screen doors which had to be opened before an entrance could be had.

The cases cited by respondent as showing that plaintiff was not guilty of contributory negligence as a matter of law do not appear to be applicable. In Langan v. St. Louis, etc., R. Co., 72 Mo. 392, plaintiff was hurt while carrying a trunk along a platform by a train coming up suddenly behind, but which was not in sight only a moment before. In Crawford v. Kansas City Stock Yards, 215 Mo. 395, the plaintiff, while riding in a car which was passing a gate which the stock yards negligently allowed to be open outward, was struck and injured by the protruding gate. In Baldwin v. Hanley, etc., Coffee Co., 202 Mo. App. 650, the plaintiff went down in an elevator to a basement and stepped out of it, leaving it open for only a minute and returned having no reason to think it was gone and stepped into the empty shaft. There was an insufficiency of light and the circumstances were such that it could not be said the plaintiff was conclusively negligent because he thought the elevator was there. In that case, a basement light could be relied upon to shine when the elevator was not there, but it failed to burn at this time.

It is no doubt true that negligence is not imputable to a person for failing to look out for danger where, under the surrounding circumstances, he had no reason to suspect any; but, as we view it, such principle is not applicable to the plaintiff's case. He knew an elevator shaft was in the doorway, that an elevator was used in it, and that in going up, it had to be stopped at the first floor. The place was

light enough for him to see if he had looked, but, without looking, he opened the screen door and carelessly stepped in. We think he was conclusively negligent. .

Point is made by plaintiff that since defendants did not demur to the evidence at the close of plaintiff's case, but waited until the close of all the evidence and then demurred, such demurrer is not available now, since they asked instructions after the demurrer was overruled. We do not understand such to be the law. [Kenefick-Hammond v. Fire Ins. Society, 205 Mo. 294, 312.] · Even if defendants had demurred at the close of the plaintiff's case, yet such would have been waived by putting on their own evidence, and, on their appeal, the correctness of the trial court's ruling on their demurrer at the close of the whole case is the open question and that depends upon the whole evidence. [Frye v. St. Louis, etc., R. Co., 200 Mo. 377; Riley v. O'Kelly, 250 Mo. 647, 660. See, also, Cullen v. Atchison Co., 268 S. W. 93, 95.]

There are other questions raised as to the correctness of instructions given for plaintiff and the refusal of instructions for defendants, but they need not be considered in the view we entertain that plaintiff is not entitled to recover.

The judgment is reversed. All concur.

